1  LAWYERS FOR CLEAN WATER, INC.
2  Daniel Cooper (Bar No. 153576)
          Email: daniel@lawyersforcleanwater.com
3  Caroline Koch (Bar No. 266068)
          Email: caroline@lawyersforcleanwater.com
4  1004-A O'Reilly Avenue
5  San Francisco, California 94129
6  Telephone: (415) 440-6520
   Facsimile: (415) 440-4155
7
   *Attorneys for Plaintiffs*
8  INLAND EMPIRE WATERKEEPER and ORANGE COUNTY COASTKEEPER
9
   *Additional Plaintiffs' Counsel Listed On Next Page*
10

11             **UNITED STATES DISTRICT COURT**
             **CENTRAL DISTRICT OF CALIFORNIA**
12

13 INLAND EMPIRE WATERKEEPER, a          Civil Case No.
   program of ORANGE COUNTY
14 COASTKEEPER; ORANGE COUNTY
   COASTKEEPER, a California non-profit   **COMPLAINT FOR DECLARATORY**
15 corporation,                          **AND INJUNCTIVE RELIEF AND**
                                         **CIVIL PENALTIES**
16
17             Plaintiffs,
          vs.
18
                                         **(Federal Water Pollution Control Act,**
19 BURRTEC WASTE GROUP, INC., a          **33 U.S.C. §§ 1251 *et seq.*)**
   California corporation; BURRTEC WASTE
20 INDUSTRIES, INC., a California
   corporation, JACK'S DISPOSAL
21 SERVICE, INC., a California corporation,
                  Defendants.
22
23
24
25
26
27
28

Complaint                              1

1    INLAND EMPIRE WATERKEEPER
2    Colin Kelly (Bar No. 266956)
            Email:  colin@iewaterkeeper.org
3    6876 Indiana Avenue, Suite D
4    Riverside, California 92506
     Telephone:  (951) 530-8823
5    Facsimile:  (951) 530-8824

6

7    ORANGE COUNTY COASTKEEPER
     Colin Kelly (Bar No. 266956)
8            Email:  colin@coastkeeper.org
9    3151 Airway Avenue, Suite F-110
     Costa Mesa, California 92626
10   Telephone:  (714) 850-1965
11   Facsimile:  (714) 850-1592

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Complaint                              2

1    Inland Empire Waterkeeper and Orange County Coastkeeper (collectively

2    "Waterkeeper" or "Plaintiffs"), by and through their counsel, hereby allege:

3    **I.      JURISDICTION AND VENUE**

4        1.      This is a civil suit brought under the citizen suit enforcement provision of

5    the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act"

6    or "CWA"). *See* 33 U.S.C. § 1365. This Court has subject matter jurisdiction over the

7    parties and this action pursuant to 33 U.S.C. § 1365(a)(1) and 28 U.S.C. §§ 1331 and

8    2201 (an action for declaratory and injunctive relief arising under the Constitution and

9    laws of the United States).

10        2.      On 8 October 2013, Waterkeeper issued a sixty (60) day notice letter of

11    intent to sue ("Notice Letter") to Burrtec Waste Industries, Inc. and Burrtec Waste Group,

12    Inc., and Jack's Disposal Service Inc. (collectively "Defendants") for their violations of

13    the Clean Water Act and California's Permit for Discharges of Stormwater Associated

14    with Industrial Activities. The Notice Letter was also sent to the registered agent for

15    Defendants, as required by 40 C.F.R. § 135.2(a)(1). Finally, the Notice Letter was sent to

16    the Administrator of the United States Environmental Protection Agency ("EPA"), the

17    Administrator of EPA Region IX, the Executive Director of the State Water Resources

18    Control Board ("State Board"), and the Executive Officer of the Regional Water Quality

19    Control Board, Santa Ana Region ("Regional Board") as required by the CWA. 40 C.F.R.

20    § 135.2(a)(1). The Notice Letter is attached hereto as Exhibit A and is incorporated

21    herein by reference.

22        3.      More than sixty (60) days have passed since the Notice Letter was served on

23    Defendants and the State and Federal agencies. Waterkeeper is informed and believes,

24    and thereon alleges, that neither the EPA nor the State of California has commenced or is

25    diligently prosecuting an action to redress the violations alleged in this complaint. *See* 33

26    U.S.C. § 1365(b)(1)(B). This action is not barred by any prior administrative penalty

27    under Section 309(g) of the CWA. 33 U.S.C. § 1319(g).

28        4.      Venue is proper in the Central District of California pursuant to Section

Complaint                                    3

1   505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the sources of the violations are
2   located within this judicial district.

3   **II.    INTRODUCTION**

4        5.      This Complaint seeks relief for Defendants' substantive and procedural
5   violations of California's Permit for Discharges of Stormwater Associated with Industrial
6   Activities (National Pollution Discharge Elimination System General Permit No.
7   CAS000001, State Water Resources Control Board Water Quality Order No. 92-12-
8   DWQ, as amended by Order No. 97-03-DWQ) (hereinafter "Storm Water Permit")
9   resulting from their operations at 5455 Industrial Parkway, San Bernardino, California,
10  92407 ("Jack's Disposal Facility").

11       6.      Waterkeeper specifically alleges that Defendants' discharges of pollutants
12  from the Jack's Disposal Facility into waters of the United States; violations of the filing,
13  monitoring and reporting, and best management practice requirements; and violations of
14  other procedural and substantive requirements of the Storm Water Permit and the CWA
15  are ongoing and continuous.

16       7.      With every storm event, hundreds of millions of gallons of polluted
17  rainwater, originating from industrial operations such as the Jack's Disposal Facility,
18  pour into area surface waters. The consensus among agencies and water quality
19  specialists is that storm water pollution accounts for more than half of the total pollution
20  entering the marine and river environments each year. Surface waters are ecologically
21  sensitive areas and, although pollution and habitat destruction have drastically diminished
22  once-abundant and varied fisheries, surface waters are still essential habitat for dozens of
23  fish and bird species as well as macro-invertebrate and invertebrate species. Storm water
24  contaminated with sediment, heavy metals, and other pollutants harm the special
25  aesthetic and recreational significance that surface waters have for people in surrounding
26  communities. Public use of area surface waters for water contact sports exposes many
27  people to toxic metals and other contaminants in storm water and non-storm water
28  discharges. Non-contact recreational and aesthetic opportunities, such as wildlife

Complaint                               4

1 | observation, are also impaired by polluted discharges to those waters.

2 | **III.    PARTIES**

3 |     **A.    Inland Empire Waterkeeper and Orange County Coastkeeper.**

4 |         8.    Inland Empire Waterkeeper is a program of Orange County Coastkeeper.

5 | Inland Empire Waterkeeper's office is located at 6876 Indiana Avenue, Suite D,

6 | Riverside, California 92506.

7 |         9.    Orange County Coastkeeper is a non-profit public benefit corporation

8 | organized under the laws of the State of California. Orange County Coastkeeper's office

9 | is located at 3151 Airway Avenue, Suite F-110, Costa Mesa, California 92626.

10 |         10.    Together, Inland Empire Waterkeeper and Orange County Coastkeeper have

11 | over 2,000 members who live and/or recreate in and around the Santa Ana River

12 | watershed. Waterkeeper is dedicated to the preservation, protection, and defense of the

13 | environment, wildlife, and natural resources of local surface waters. To further these

14 | goals, Waterkeeper actively seeks Federal and State agency implementation of the Clean

15 | Water Act, and, where necessary, directly initiates enforcement actions on behalf of itself

16 | and others.

17 |         11.    Waterkeeper members use and enjoy the Santa Ana River and its tributaries

18 | for fishing, boating, swimming, bird watching, picnicking, viewing wildlife, sailing,

19 | kayaking, hiking, and engaging in scientific study, including monitoring activities.

20 |         12.    Discharges of polluted storm water and non-storm water from the Jack's

21 | Disposal Facility degrade water quality and harm aquatic life in the Santa Ana River and

22 | its tributaries, and impair Waterkeeper's members' use and enjoyment of those waters.

23 |         13.    The violations of the Storm Water Permit from the Jack's Disposal Facility

24 | are ongoing and continuous. Thus, the interests of Waterkeeper's members have been, are

25 | being, and will continue to be adversely affected by Defendants' failure to comply with the

26 | Storm Water Permit and the CWA.

27 |     **B.    The Jack's Disposal Facility Owners and/or Operators.**

28 |         14.    Waterkeeper is informed and believes, and thereon alleges, that Burrtec

Complaint                              5

1 | Waste Industries, Inc. is an owner of the Jack's Disposal Facility.

2 |         15.     Waterkeeper is informed and believes, and thereon alleges, that Burrtec

3 | Waste Industries, Inc. is an operator of the Jack's Disposal Facility.

4 |         16.     Waterkeeper is informed and believes, and thereon alleges, that Burrtec

5 | Waste Group, Inc. wholly owns Burrtec Waste Industries, Inc.

6 |         17.     Waterkeeper is informed and believes, and thereon alleges, that Burrtec

7 | Waste Group, Inc. is an owner of the Jack's Disposal Facility.

8 |         18.     Waterkeeper is informed and believes, and thereon alleges, that Burrtec

9 | Waste Group, Inc. is an operator of the Jack's Disposal Facility.

10 |         19.     Waterkeeper is informed and believes, and thereon alleges, that Jack's

11 | Disposal Service Inc. is an operator of the Jack's Disposal Facility.

12 |         20.     Waterkeeper is informed and believes, and thereon alleges, that Jack's

13 | Disposal Service Inc. is an owner of the Jack's Disposal Facility.

14 |         21.     Waterkeeper refers to Burrtec Waste Industries, Inc., Burrtec Waste Group,

15 | Inc., and Jack's Disposal Service Inc. collectively as the "Jack's Disposal Facility

16 | Owners and/or Operators."

17 |         22.     Waterkeeper is informed and believes, and thereon alleges, that Burrtec

18 | Waste Group, Inc. is an active corporation registered in California.

19 |         23.     Waterkeeper is informed and believes, and thereon alleges, that Burrtec

20 | Waste Industries, Inc. is an active corporation registered in California.

21 |         24.     Waterkeeper is informed and believes, and thereon alleges, that Jack's

22 | Disposal Service Inc. is an active corporation registered in California.

23 |         25.     Waterkeeper is informed and believes, and thereon alleges, that the name

24 | and address of the Registered Agent for Burrtec Waste Industries, Inc. is Cole Burr, 9890

25 | Cherry Avenue, Fontana, California 92335.

26 |         26.     Waterkeeper is informed and believes, and thereon alleges, that the name

27 | and address of the Registered Agent for Burrtec Waste Group, Inc. is Cole Burr, 9890

28 | Cherry Avenue, Fontana, California 92335.

Complaint                                          6

27.     Waterkeeper is informed and believes, and thereon alleges, that the name and address of the Registered Agent for Jack's Disposal Service Inc. is Cole Burr, 9890 Cherry Avenue, Fontana, California 92335.

28.     Waterkeeper is informed and believes, and thereon alleges, that Burrtec Waste Group, Inc. and Burrtec Waste Industries, Inc. also operate four other industrial facilities located at: 988 North Waterman Canyon Road, Crestline, California 92325; 9890 Cherry Avenue, Fontana, California, 92335; 1830 Agua Mansa Road, Riverside, California, 92509; and 13373 Napa Street, Fontana, California 92335 ("Burrtec Facilities").

29.     Plaintiffs seek relief for the unlawful discharges of pollutants into waters of the United States from Defendants' activities at the Burrtec Facilities in separate complaints filed with the Court. These matters are related, as they also allege violations of the Storm Water Permit against Burrtec Waste Group, Inc. and Burrtec Waste Industries, Inc., as well as other operators of the Burrtec Facilities. Waterkeeper will file a Notice of Related Cases as soon as practicable.

## IV.     LEGAL BACKGROUND

### A.     The Clean Water Act.

30.     Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States unless the discharge complies with various enumerated sections of the CWA. Among other things, section 301(a) prohibits discharges not authorized by, or in violation of, the terms of an NPDES permit issued pursuant to section 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342(b).

31.     Section 402(b) of the CWA, 33 U.S.C. § 1342(b), allows each state to administer its own EPA-approved NPDES permit program for regulating the discharge of pollutants, including discharges of polluted storm water.

32.     Section 402(b) of the CWA, 33 U.S.C. § 1342(b), establishes a framework for regulating industrial storm water discharges under the NPDES program. States with approved NPDES permit programs are authorized by section 402(b) to regulate industrial

1   storm water discharges through individual NPDES permits issued to dischargers and/or
2   through the issuance of a single, statewide, general NPDES permit applicable to all
3   industrial storm water dischargers. *See* 33 U.S.C. § 1342(b).

4       33.    In California, the State Board is charged with regulating pollutants to protect
5   California's water resources. *See* Cal. Water Code § 13001.

6       34.    The Storm Water Permit is a statewide general NPDES permit issued by the
7   State Board pursuant to section 402 of the CWA, 33 U.S.C. § 1342(b) and 40 C.F.R
8   § 123.25.

9       35.    In order to discharge storm water lawfully in California, industrial
10   dischargers must secure coverage under the Storm Water Permit and comply with its
11   terms, or obtain and comply with an individual NPDES permit.

12       36.    Violations of the Storm Water Permit are also violations of the CWA. *See*
13   Storm Water Permit, Section C(1).

14       37.    Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1), provides for citizen
15   enforcement actions against any "person" who is alleged to be in violation of an "effluent
16   standard or limitation . . . or an order issued by the Administrator or a State with respect
17   to such a standard or limitation." *See* 33 U.S.C. §§ 1365(a)(i) and 1365(f).

18       38.    Burrtec Waste Industries, Inc. is a "person" within the meaning of section
19   502(5) of the Clean Water Act, 33 U.S.C. § 1362(5).

20       39.    Burrtec Waste Group, Inc. is a "person" within the meaning of section
21   502(5) of the Clean Water Act, 33 U.S.C. § 1362(5).

22       40.    Jack's Disposal Service Inc. is a "person" within the meaning of section
23   502(5) of the Clean Water Act, 33 U.S.C. § 1362(5).

24       41.    An action for injunctive relief is authorized under section 505(a) of the
25   CWA, 33 U.S.C. § 1365(a).

26       42.    Each separate violation of the Clean Water Act subjects the violator to a
27   penalty of up to $32,500 per day per violation for violations occurring prior to 12 January
28   2009, and $37,500 per day per violation for violations occurring on and after 12 January

1   2009. 33 U.S.C. §§ 1319(d) and 1365(a); Adjustment of Civil Monetary Penalties for

2   Inflation, 40 C.F.R. § 19.4.

3        43.    Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), allows

4   prevailing or substantially prevailing parties to recover litigation costs, including

5   attorneys' fees, experts' fees, and consultants' fees.

6       **B.**    **The Storm Water Permit's Effluent Limitations, Receiving Water**

7             **Limitations, and Discharge Prohibitions.**

8        44.    Effluent Limitation B(3) of the Storm Water Permit requires dischargers to

9   reduce or prevent pollutants associated with industrial activity in storm water discharges

10   through the implementation of Best Available Technology Economically Achievable

11   ("BAT") for toxic or non-conventional pollutants, and Best Conventional Pollutant

12   Control Technology ("BCT") for conventional pollutants. Toxic pollutants are listed at 40

13   C.F.R. § 401.15 and include copper, lead, and zinc, among others. Conventional

14   pollutants are listed at 40 C.F.R. § 401.16 and include biological oxygen demand

15   ("BOD"), total suspended solids ("TSS"), oil and grease ("O&G"), pH, and fecal

16   coliform, among others.

17        45.    EPA's NPDES Multi-Sector General Permit for Stormwater Discharges

18   Associated With Industrial Activity ("MSGP") sets numeric benchmarks for pollutant

19   concentrations in storm water discharges ("EPA Benchmarks").

20        46.    The EPA Benchmarks provide an objective standard to determine whether a

21   facility's Best Management Practices ("BMPs") are successfully developed and/or

22   implemented. *See* MSGP Fact Sheet, at 95 (2008) *available at*

23   http://www.epa.gov/npdes/pubs/msgp2008_finalfs.pdf.

24        47.    Discharges from an industrial facility containing pollutant concentrations

25   that exceed EPA Benchmarks indicate that the facility has not successfully developed

26   and/or implemented BMPs that meet BAT for toxic pollutants and BCT for conventional

27   pollutants, in violation of Effluent Limitation B(3). *Id.*

28        48.    Receiving Water Limitation C(1) of the Storm Water Permit prohibits storm

1 | water and non-storm water discharges that adversely impact human health or the
2 | environment.

3 |     49.    Discharges with pollutant levels that exceed levels known to adversely
4 | impact human health and the environment are violations of Receiving Water Limitation
5 | C(1) of the Storm Water Permit.

6 |     50.    Receiving Water Limitation C(2) of the Storm Water Permit prohibits storm
7 | water and non-storm water discharges that "cause or contribute to an exceedance of any
8 | "applicable water quality standard in a Statewide Water Quality Control Plan or the
9 | applicable Regional Board's Basin Plan."

10 |     51.    Water Quality Standards ("WQS") are pollutant concentration levels
11 | determined by the State Board, the various regional boards, and the EPA, to be protective
12 | of the beneficial uses of the waters that receive polluted discharges. The Water Quality
13 | Control Plan for the Santa Ana River Basin, California Regional Water Quality Control
14 | Board, Santa Ana Region, 3rd Ed. (Rev. June 2011) ("Basin Plan"), identifies the
15 | "Beneficial Uses" of water bodies in the region.

16 |     52.    The Beneficial Uses for the Santa Ana River, Cable Creek, Cajon Canyon
17 | Creek, and Lytle Creek (collectively "Receiving Waters"), which receive polluted
18 | discharges from the Jack's Disposal Facility, are: Agricultural Supply; Groundwater
19 | Recharge; Water Contact Recreation; Non-contact Water Recreation; Warm Freshwater
20 | Habitat; Wildlife Habitat; and Rare, Threatened or Endangered Species. *See* Basin Plan,
21 | Table 3-1.

22 |     53.    Discharges of pollutants at levels above WQS contribute to the impairment
23 | of the Beneficial Uses of the waters receiving the discharges.

24 |     54.    Surface waters that cannot support the Beneficial Uses of those waters listed
25 | in the Basin Plan are designated as impaired water bodies pursuant to section 303(d) of
26 | the Clean Water Act, 33 U.S.C. § 1313(d).

27 |     55.    The 2010 303(d) List of Impaired Water Bodies identifies Lytle Creek and
28 |

1  Reach 4 of the Santa Ana River as impaired for pathogens.[1]

2      56.    Reach 3 of the Santa Ana River is impaired for copper, lead, and pathogens.

3  *Id.*

4      57.    Reach 2 of the Santa Ana River as impaired for indicator bacteria. *Id.*

5      58.    WQS applicable to dischargers covered by the Storm Water Permit include,

6  but are not limited to, those set out in the Basin Plan and the Criteria for Priority Toxic

7  Pollutants for the State of California ("CTR"), 40 C.F.R. § 131.38.

8      59.    The CTR includes numeric criteria set to protect human health and the

9  environment in the State of California.[2]

10      60.    Discharges that cause or contribute to pollutant levels in receiving waters

11  that exceed the CTR criteria, the Basin Plan, and/or other applicable WQS are violations

12  of Receiving Water Limitation C(2) of the Storm Water Permit.

13      61.    Except as otherwise authorized, Discharge Prohibition A(1) of the Storm

14  Water Permit prohibits permittees from discharging materials other than storm water

15  (non-storm water discharges) either directly or indirectly to waters of the United States.

16  Prohibited non-storm water discharges must be either eliminated or permitted by a

17  separate NPDES permit. *See* Storm Water Permit, Discharge Prohibition A(1).

18      62.    Unauthorized discharges of materials other than storm water (non-storm

19  water) are violations of Discharge Prohibition A(1) of the Storm Water Permit.

20  **C.    The Storm Water Permit's Storm Water Pollution Prevention Plan**

21  **Requirements.**

22      63.    Section A(1) and Provision E(2) of the Storm Water Permit require

23  dischargers to develop and implement a Storm Water Pollution Prevention Plan

24  ("SWPPP") that complies with the requirements of the Storm Water Permit prior to

---

25  [1] 2010 Integrated Report – All Assessed Waters, *available at*:

26  http://www.waterboards.ca.gov/water_issues/programs/tmdl/integrated2010.shtml (last accessed on November 1, 2013).

27  [2] Water Quality Standards; Establishment of Numeric Criteria for Priority Toxic

28  Pollutants for the State of California Factsheet, EPA-823-00-008, April 2000 *available at* http://water.epa.gov/lawsregs/rulesregs/ctr/factsheet.cfm.

Complaint                    11

1  commencing industrial activities.

2  64.  The objectives of the SWPPP are to identify and evaluate sources of

3  pollutants associated with industrial activities that may affect the quality of storm water

4  discharges, to identify and implement site-specific BMPs to prevent the exposure of

5  pollutants to storm water, and to reduce or prevent the discharge of polluted storm water

6  from industrial facilities. Storm Water Permit, Section A(2).

7  65.  Section A(3) of the Storm Water Permit requires a discharger to identify the

8  members of its on-site Storm Water Pollution Prevention Team and to indicate each team

9  member's responsibilities in developing, implementing, and revising the SWPPP to

10  ensure compliance with the Storm Water Permit.

11  66.  Section A(4) of the Storm Water Permit requires that the SWPPP include a

12  site map that indicates specified information, including, but not limited to: the facility

13  boundaries; an outline of all storm water drainage areas within the facility boundaries;

14  storm water drainage areas and directions of flow for each drainage area; on-site surface

15  water bodies; nearby water bodies; areas of soil erosion; municipal storm drain inlets

16  where the facility's storm water discharges may be received; the location of the storm

17  water collection, conveyance, and discharge system; the location of structural control

18  measures that affect storm water discharges; an outline of all impervious areas of the

19  facility, including paved areas, buildings, covered storage areas, and other roofed

20  structures; locations where materials are directly exposed to precipitation; locations

21  where significant spills or leaks have occurred; and all areas of industrial activity,

22  including areas that are actual and potential pollutant sources.

23  67.  Section A(5) of the Storm Water Permit requires that the SWPPP include a

24  list of significant materials handled and stored at the site. For each material identified on

25  the list, the discharger must describe certain specified information, including locations

26  where the material is typically stored, received, and handled, as well as typical quantities

27  and frequency of the material at the facility.

28  68.  Section A(6) of the Storm Water Permit requires a discharger to include in

Complaint                                    12

1   its facility SWPPP a narrative description of the facility's industrial activities, associated

2   potential pollutant sources, and potential pollutants that could be discharged in storm

3   water discharges or authorized non-storm water discharges. Section A(6) also requires the

4   facility SWPPP to include a table summarizing such information and linking potential

5   pollutant sources to specific control measures.

6        69.   Section A(7) of the Storm Water Permit requires a discharger to include in

7   its facility SWPPP a narrative evaluation of all industrial activities and potential pollutant

8   sources at the facility.

9        70.   Section A(8) of the Storm Water Permit requires a discharger to include in

10   its facility SWPPP a narrative description and a summary of the storm water BMPs to be

11   implemented at the facility. Each BMP must be linked to the potential pollutant source it

12   is intended to remedy. BMPs must be described for all potential pollutant sources at the

13   facility, including those identified pursuant to Sections A(6) and A(7) of the Storm Water

14   Permit.

15        71.   Section A(9) of the Storm Water Permit requires the discharger to evaluate

16   the SWPPP on an annual basis and revise it as necessary to ensure compliance with the

17   Storm Water Permit.

18        72.   Sections A(9)(a)-(c) of the Storm Water Permit require that the discharger

19   conduct an Annual Comprehensive Site Compliance Evaluation ("ACSCE Report") that

20   includes a review of all visual observation records, inspection reports, and sampling and

21   analysis results; a visual inspection of all potential pollutant sources for evidence of, or

22   the potential for, pollutants entering the drainage system; a review and evaluation of all

23   BMPs to determine whether the BMPs are adequate, properly implemented, and

24   maintained, or whether additional BMPs are needed; and a visual inspection of

25   equipment needed to implement the SWPPP.

26        73.   Section A(9)(d) of the Storm Water Permit requires that the ACSCE Report

27   include an identification of personnel performing the evaluation, the date(s) of the

28   evaluation(s), necessary SWPPP revisions, a schedule for implementing SWPPP

revisions, any instances of non-compliance and the corrective actions taken, and a certification that the discharger is in compliance with the Storm Water Permit. If certification of compliance cannot be provided, the discharger must explain in the ACSCE Report why the facility is not in compliance with the Storm Water Permit. The ACSCE Report shall be submitted as part of the Annual Report specified in Section B(14) of the Storm Water Permit.

74.    Section A(10)(d) of the Storm Water Permit requires a facility to revise and implement the revised SWPPP within ninety (90) days after the facility operator determines that its SWPPP is not in compliance with the Storm Water Permit.

**D.    The Storm Water Permit's Monitoring and Reporting Requirements.**

75.    Provision E(3) and Section B(1) of the Storm Water Permit require dischargers to develop and implement a Monitoring and Reporting Program ("M&RP") when industrial activities commence.

76.    The objectives of the M&RP are to ensure that BMPs have been adequately developed, implemented, and revised if necessary, and to ensure that storm water and non-storm water discharges are in compliance with the Storm Water Permit's Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations. Storm Water Permit, Sections B(2)(a) and B(2)(b).

77.    The M&RP aids in the implementation and revision of the SWPPP and measures the effectiveness of BMPs to prevent or reduce pollutants in storm water discharges. Storm Water Permit, Sections B(2)(c) and B(2)(d).

78.    Section B(2)(d) of the Storm Water Permit requires that the M&RP be revised as necessary to ensure compliance with the Storm Water Permit.

79.    Section B(3) of the Storm Water Permit requires a discharger to conduct visual observations of all drainage areas within the facility for the presence of authorized and unauthorized non-storm water discharges. Observations under this section must occur during daylight hours, on days with no storm water discharges, and during scheduled facility operating hours.

80.   Section B(4) of the Storm Water Permit requires a discharger to conduct visual observations of storm water discharges during at least one storm event per month during the Wet Season (October 1 – May 1) in the first hour of discharge at each discharge location. Observations under this section must take place during daylight hours, when the discharge is preceded by at least three (3) days without storm water discharges, and during scheduled facility operating hours.

81.   Both Sections B(3) and B(4) of the Storm Water Permit require a discharger to record and document visual observations. Records of observation must describe the presence of any floating or suspended materials, O&G, discolorations, turbidity, odor, and the source of any pollutants observed during the visual observation. Dischargers must maintain records of visual observations that include the observation date, locations observed, and responses taken to eliminate unauthorized non-storm water discharges and to reduce or prevent pollutants from contacting non-storm water and storm water discharges. Furthermore, Sections B(3) and B(4) require that a discharger must revise a facility's SWPPP in order to rectify any instances of noncompliance observed during visual observations.

82.   Sections B(5) and (7) of the Storm Water Permit require dischargers to visually observe and collect samples of storm water discharges from all locations where storm water is discharged at the facility.

83.   Section B(5)(a) of the Storm Water Permit requires dischargers to collect storm water samples during the first hour of discharge from the first storm event of the Wet Season and at least one other storm event during the Wet Season. All storm water discharge locations must be sampled. *See* Storm Water Permit, Section B(5)(a). Facility operators that do not collect samples from the first storm event of the Wet Season are still required to collect samples from two other storm events of the Wet Season and must explain in the Annual Report why the first storm event was not sampled. *Id.*

84.   Section B(5)(b) of the Storm Water Permit requires that sampling conducted pursuant to the Storm Water Permit occur during scheduled facility operating hours that

Complaint                                              15

1   are preceded by at least three (3) working days without storm water discharge.

2       85.    Section B(5)(c)(i) of the Storm Water Permit requires dischargers to analyze

3   each sample for pH, specific conductance ("SC"), TSS, and total organic carbon

4   ("TOC"). A discharger may elect to analyze for O&G instead of TOC.

5       86.    Section B(5)(c)(ii) of the Storm Water Permit requires dischargers to

6   analyze each sample for toxic chemicals and other pollutants likely to be present in the

7   storm water discharged from the facility in significant quantities.

8       87.    Section B(5)(c)(iii) of the Storm Water Permit requires dischargers to

9   analyze storm water samples for additional parameters depending on the facility's

10  Standard Industrial Classification ("SIC") code, as indicated in Table D of the Storm

11  Water Permit. Facilities classified as SIC code 4953 (Hazardous Waste Treatment

12  Storage or Disposal Facilities) must analyze storm water samples for ammonia,

13  magnesium, chemical oxygen demand ("COD"), arsenic, cadmium, cyanide, lead,

14  mercury, selenium, and silver, in addition to parameters identified elsewhere in the Storm

15  Water Permit. Storm Water Permit, Table D, Sector K.

16      88.    Section B(14) of the Storm Water Permit requires that dischargers submit an

17  Annual Report to the applicable regional board by 1 July of each year. The Annual

18  Report must include a summary of visual observations and sampling results, an

19  evaluation of the visual observations and sampling and analysis results, laboratory

20  reports, the ACSCE Report specified in Section A(9), an explanation of why a facility did

21  not implement any activities required by the Storm Water Permit, and the records

22  specified in Section B(13).

23      89.    Section C(9) of the Storm Water Permit requires that all reports,

24  certifications, and other information required by the Storm Water Permit or requested by

25  a regional board be signed by an authorized representative of the facility's operators.

26      90.    Section C(10) of the Storm Water Permit requires any signatory subject to

27  Section C(9) to make the following certification: "I certify under penalty of law that this

28  document and all attachments were prepared under my direction or supervision in

Complaint                          16

1  accordance with a system designed to ensure that qualified personnel properly gather and
2  evaluate the information submitted. Based on my inquiry of the person or persons who
3  manage the system, or those persons directly responsible for gathering the information,
4  the information submitted is to the best of my knowledge and belief, true, accurate, and
5  complete. I am aware that there are significant penalties for submitting false information,
6  including the possibility of fine and imprisonment for knowing violations."

7       91.    Section C(11)(b) of the Storm Water Permit requires facility operators to
8  give advance notice to the regional board or local storm water agency of anticipated
9  noncompliance with the Storm Water Permit.

10       92.    Section C(11)(d) of the Storm Water Permit requires facility operators to
11  report any incidence of noncompliance with the Storm Water Permit at the time
12  monitoring reports are submitted. Reports of noncompliance must contain (1) a
13  description of noncompliance and its cause, (2) the period of noncompliance, including
14  exact dates and times, and if the noncompliance has not been corrected, the anticipated
15  time it is expected to continue, and (3) steps taken or planned to reduce a prevent
16  recurrence of the noncompliance.

17  **V.**    **FACTUAL BACKGROUND**

18      **A.**   **The Jack's Disposal Facility's Storm Water Permit Coverage.**

19       93.    Waterkeeper is informed and believes, and thereon alleges, that State Board
20  Storm Water Multiple Application & Report Tracking System ("SMARTS") indicates
21  that the State Board confirmed receipt of a Notice of Intent to Comply with the Terms of
22  the General Permit to Discharge Strom Water Associated with Industrial Activities
23  ("NOI") for the Jack's Disposal Facility on 3 November 2003 ("2003 NOI Receipt").

24       94.    Information available to Waterkeeper indicates that the Jack's Disposal
25  Facility submitted a second NOI to the Regional Board on 9 July 2012 ("2012 NOI").

26       95.    The 2012 NOI identifies the Facility name and location as "Jack's Disposal
27  Service Inc., 5455 Industrial Pkwy, San Bernardino."

28       96.    The 2012 NOI identifies the Facility operator as "Burrtec Waste Industries

1 Inc."

2      97.   Waterkeeper is informed and believes, and thereon alleges, that SMARTS

3 identifies the Facility name and location as "Jack's Disposal Service, Inc, 5455 Industrial

4 Pkwy, San Bernardino, CA, 92407."

5      98.   Waterkeeper is informed and believes, and thereon alleges, that SMARTS

6 lists the Jack's Disposal Facility's coverage under the Storm Water Permit as "Active."

7      99.   The 2012 NOI and SMARTS list the Jack's Disposal Facility Waste

8 Discharger Identification Number ("WDID") as 8 36I018452.

9      100.   Waterkeeper is informed and believes, and thereon alleges, that the SIC

10 codes for the Jack's Disposal Facility are: 4212 (Local Trucking, Without Storage), 4953

11 (Hazardous Waste Treatment Storage and Disposal Facilities), and 5093 (Scrap

12 Recycling Facilities).

13      101.   Industrial facilities classified as SIC code 4953 and/or 5093 require Storm

14 Water Permit coverage for the entire facility. Storm Water Permit, Attachment 1,

15 Sections 4, 6.

16      102.   For facilities classified as 4212, the Storm Water Permit requires permit

17 coverage only for the portions of the facility involved in vehicle maintenance (including

18 repair, rehabilitation, lubrication, painting and fueling), and other operations associated

19 with industrial activity. Storm Water Permit, Attachment 1, Section 8.

20      103.   Waterkeeper is informed and believes, and thereon alleges, that these

21 regulated industrial activities are conducted at locations throughout the entire Jack's

22 Disposal Facility and that the entire Jack's Disposal Facility requires Storm Water Permit

23 coverage.

24      104.   Waterkeeper is informed and believes, and thereon alleges, that to the extent

25 industrial activities relating to SIC codes 4212, 4953, and/or 5093 are not conducted at

26 locations throughout the entire Jack's Disposal Facility, the entire Jack's Disposal

27 Facility requires Storm Water Permit coverage because there are no BMPs at the Jack's

28 Disposal Facility that separate the storm water flows from portions of the Jack's Disposal

1 | Facility where non-regulated activities may occur from storm water flows from the
2 | regulated industrial activities.

3 |    105.   Waterkeeper is informed and believes, and thereon alleges, that the Jack's
4 | Disposal Facility is approximately five (5) acres in size.

5 |    106.   The 2012 NOI indicates that the Jack's Disposal Facility Owners and/or
6 | Operators applied for Storm Water Permit coverage for five (5) acres of the Facility.

7 | **B.   Industrial Activities at the Jack's Disposal Facility.**

8 |    107.   Waterkeeper is informed and believes, and thereon alleges, that the
9 | industrial activities conducted at the Jack's Disposal Facility include, but are not limited
10 | to: vehicle maintenance and repair; vehicle and equipment cleaning operations; vehicle
11 | and equipment fueling; vehicle and equipment storage; and fuel and hazardous materials
12 | storage, including storage of motor oil, hydraulic/lube oil, degreasers, paints, and
13 | cleaning detergents and solvents.

14 |    108.   Waterkeeper is informed and believes, and thereon alleges, that hazardous
15 | materials, including, but not limited to, motor oils, hydraulic/lubricant oil, diesel,
16 | degreasers, paints, cleaning detergents, and solvents, are stored at the Jack's Disposal
17 | Facility.

18 |    109.   Waterkeeper is informed and believes, and thereon alleges, that industrial
19 | activities at the Jack's Disposal Facility are conducted outdoors and without cover.

20 |    110.   Waterkeeper is informed and believes, and thereon alleges, that outdoor
21 | industrial activities at the Jack's Disposal Facility are conducted without secondary
22 | containment or other measures to prevent polluted discharges from the Facility.

23 |    111.   Waterkeeper is informed and believes, and thereon alleges, that pollutants
24 | are tracked out of covered vehicle maintenance areas at the Jack's Disposal Facility to
25 | uncovered areas.

26 |    112.   Waterkeeper is informed and believes, and thereon alleges, that pollutants
27 | associated with the Jack's Disposal Facility include, but are not limited to, metals,
28 | organic compounds from solvents and cleaning compounds, O&G, trash, and fugitive and

1  other dust, dirt, and debris.

2       113.   Waterkeeper is informed and believes, and thereon alleges, that additional

3  pollutants associated with solid waste vehicle and equipment maintenance facilities

4  include, but are not limited to, hydraulic fluids, transmission fluid, antifreeze, TSS,

5  pathogens, and nutrients.

6       114.   Waterkeeper is informed and believes, and thereon alleges, that sources of

7  pollutants at the Jack's Disposal Facility include, but are not limited to: truck and

8  equipment storage and maintenance; hazardous waste storage; storage of materials

9  associated with vehicle maintenance and repair; and other industrial activities.

10       115.   Waterkeeper is informed and believes, and thereon alleges, that the Jack's

11  Disposal Facility Owners and/or Operators have failed and continue to fail to adequately

12  develop and/or implement BMPs to prevent the exposure of pollutants and their sources

13  to storm water at the Jack's Disposal Facility.

14       116.   Waterkeeper is informed and believes, and thereon alleges, that the Jack's

15  Disposal Facility Owners and/or Operators have failed and continue to fail to adequately

16  develop and/or implement BMPs sufficient to prevent polluted storm water from

17  discharging from the Jack's Disposal Facility.

18       117.   Waterkeeper is informed and believes, and thereon alleges, that the Jack's

19  Disposal Facility Owners and/or Operators have failed and continue to fail to adequately

20  develop and/or implement required BMPs to prevent prohibited non-storm water

21  discharges from the Jack's Disposal Facility.

22       118.   Waterkeeper is informed and believes, and thereon alleges, that the Jack's

23  Disposal Facility Owners' and/or Operators' failure to properly address pollutants and

24  their sources results in the discharge of polluted storm water and/or non-storm water from

25  the Jack's Disposal Facility.

26      **C.**    **Discharge Locations at the Jack's Disposal Facility.**

27       119.   The Jack's Disposal Facility SWPPP site map indicates that there are two

28  discharge points at the Facility: one is located at the northwest corner of the Facility and

Complaint                           20

1 | the other is located at the southwest corner of the Facility.

2 |      120.   The Jack's Disposal Facility 2007-2008 Annual Report indicates that there is

3 | only one (1) discharge point at the Facility

4 |      121.   The Jack's Disposal Facility 2008-2009 and 2012-2013 Annual Reports

5 | indicate that there are two (2) discharge points at the Facility.

6 |      122.   The Jack's Disposal Facility 2009-2010 Annual Report indicates that there

7 | are three (3) discharge points at the Facility.

8 |      123.   The Jack's Disposal Facility 2010-2011 and 2011-2012 Annual Reports

9 | indicate that there are four (4) discharge points at the Facility.

10 |      124.   The Jack's Disposal Facility 2007-2008, 2008-2009, 2009-2010, 2010-2011

11 | and 2011-2012 Annual Reports label only one of the discharge points at the Facility,

12 | referred to as "S/W Front Gate."

13 |      125.   The Jack's Disposal Facility 2012-2013 Annual Report labels only one

14 | discharge point at the Facility, referred to as "MP1."

15 |      126.   Waterkeeper is informed and believes, and thereon alleges, that there are at

16 | least five (5) discharge points at the Jack's Disposal Facility, including but not limited to:

17 | (1) the discharge point identified in the Facility SWPPP site map in the northwest corner

18 | of the Facility; (2) the discharge point identified in the Facility SWPPP site map in the

19 | southwest corner of the Facility; (3) the northern curb on the northern driveway of the

20 | Facility, along which water flows to Industrial Parkway; (4) the southern curb of the

21 | northern driveway, along which water flows to Industrial Parkway and/or the drain outlet

22 | located near the southern curb of the northern driveway; and (5) the northern curb of the

23 | southern driveway, along which water flows to Industrial Parkway.

24 |      127.   The Jack's Disposal Facility SWPPP indicates that floor drains inside a shop

25 | area drain to a water clarifier.

26 |      128.   The Jack's Disposal Facility SWPPP does not indicate the capacity of the

27 | clarifier or the location that receives discharges from the clarifier after it reaches capacity.

28 |      129.   Waterkeeper is informed and believes, and thereon alleges, that the Jack's

1 | Disposal Facility Owners and/or Operators have failed and continue to fail to collect
2 | storm water samples from all discharge points at the Facility.

3 | **D.   The Jack's Disposal Facility's Discharges to Receiving Waters.**

4 | 130.   Waterkeeper is informed and believes, and thereon alleges, that discharges
5 | from the Jack's Disposal Facility enter the Receiving Waters.

6 | 131.   Waterkeeper is informed and believes, and thereon alleges, that each of the
7 | Receiving Waters is a federally protected water of the United States and/or a tributary to
8 | a traditional navigable water.

9 | 132.   Waterkeeper is informed and believes, and thereon alleges, that polluted
10 | storm water and non-storm water discharges from the Jack's Disposal Facility to the
11 | Receiving Waters.

12 | 133.   Waterkeeper is informed and believes, and thereon alleges, that polluted
13 | discharges from the Jack's Disposal Facility adversely impact human health and the
14 | environment, and contribute to the degradation these already impaired surface waters.

15 | 134. Waterkeeper is informed and believes, and thereon alleges, that samples of
16 | storm water discharges collected at the Jack's Disposal Facility contain levels of
17 | pollutants, including aluminum, COD, copper, iron, O&G, pH, SC, TSS, zinc, and
18 | pathogens, such as *E. coli* and coliform bacteria, in excess of levels known to adversely
19 | impact aquatic species and the environment, WQS, and EPA Benchmarks in violation of
20 | the Storm Water Permit's Effluent Limitations and Receiving Water Limitations.

21 | 135.   Exceedances of EPA Benchmarks indicate that a facility has not developed
22 | and/or implemented adequate BMPs to achieve compliance with BAT/BCT standards, as
23 | required by the Storm Water Permit Effluent Limitation B(3) and the Clean Water Act.

24 | 136. Waterkeeper is informed and believes, and thereon alleges, that the Jack's
25 | Disposal Facility Owners and/or Operators have not developed or implemented sufficient
26 | BMPs to reduce the levels of pollutants in the Jack's Disposal Facility storm water
27 | discharges to levels that do not adversely impact human health or the environment, as
28 | required by Receiving Water Limitation C(1).

137. Waterkeeper is informed and believes, and thereon alleges, that the Jack's Disposal Facility Owners and/or Operators have not developed or implemented sufficient BMPs to reduce the levels of pollutants in the Jack's Disposal Facility storm water discharges to levels that do not cause or contribute to exceedances of applicable WQS, as required by Receiving Water Limitation C(2).

138. Waterkeeper is informed and believes, and thereon alleges, that during every storm water discharge that has occurred at the Jack's Disposal Facility since 7 November 2008 through the present, the Jack's Disposal Facility Owners and/or Operators have discharged and continue to discharge storm water from the Jack's Disposal Facility that contains contaminants at levels that violate the prohibitions and limitations set forth in the Storm Water Permit.

**E.     Defendants' Prohibited Non-Storm Water Discharges.**

139. Waterkeeper is informed and believes, and thereon alleges, that water is used for dust control, truck, vehicle, equipment, and/or parts washing at the Jack's Disposal Facility.

140. Waterkeeper is informed and believes, and thereon alleges, that water used for dust control, truck, vehicle, equipment, and/or parts washing at the Jack's Disposal Facility results in unauthorized non-storm water discharges from the Facility to the Receiving Waters.

141. Waterkeeper is informed and believes, and thereon alleges, that the Jack's Disposal Facility Owners and/or Operators have not obtained a separate NPDES permit for non-storm water discharges resulting from dust control, truck, vehicle, equipment, and/or parts washing at the Jack's Disposal Facility.

142. Waterkeeper is informed and believes, and thereon alleges, that BMPs have not been developed and/or implemented to prevent non-storm water from discharging from the Jack's Disposal Facility.

143. Waterkeeper is informed and believes, and thereon alleges, that prohibited non-storm water discharges from the Jack's Disposal Facility to the Receiving Waters in

1  violation of Discharge Prohibition A(1).

2  **F.    Defendants' Failure to Comply with the Storm Water Permit's SWPPP**
3  **       Requirements.**

4      144. Waterkeeper is informed and believes, and thereon alleges, that the Jack's
5  Disposal Facility Owners and/or Operators failed and continue to fail to identify the
6  SWPPP team members responsible for specific tasks enumerated in the Facility SWPPP,
7  as required by Section A(3) of the Storm Water Permit.

8      145. Waterkeeper is informed and believes, and thereon alleges, that the Jack's
9  Disposal Facility SWPPP site map does not include an outline of storm water drainage
10  areas; portions of the drainage area impacted by run-on from surrounding areas; areas of
11  soil erosion; nearby water bodies; municipal storm drain inlets where the Facility's storm
12  water and non-storm water discharges may be received; an outline of all impervious areas
13  of the Facility; locations where materials are directly exposed to precipitation; all areas of
14  industrial activities at the Facility; and labels, legends, and other data that would ensure
15  that the site map is clear and understandable, as required by Section A(4) of the Storm
16  Water Permit.

17      146. Waterkeeper is informed and believes, and thereon alleges, that the Jack's
18  Disposal Facility SWPPP does not include a list of significant materials handled and
19  stored at the Facility, or additional information related to significant materials, such as
20  the locations where each material is stored, received, shipped, and/or handled, and the
21  typical quantities and frequency of each material at the Facility, as required by Section
22  A(5) of the Storm Water Permit.

23      147. Waterkeeper is informed and believes, and thereon alleges, that the Jack's
24  Disposal Facility SWPPP does not properly describe all of the potential pollutant sources
25  at the Jack's Disposal Facility, as required by Section A(6) of the Storm Water Permit.

26      148. Waterkeeper is informed and believes, and thereon alleges, that the Jack's
27  Disposal Facility SWPPP does not include an assessment of all potential pollutant
28  sources, as required by Section A(7) of the Storm Water Permit.

149.   Waterkeeper is informed and believes, and thereon alleges, that the Jack's Disposal Facility SWPPP does not link its described BMPs to specific potential pollutant sources, as required by Section A(8) of the Storm Water Permit.

150.   Waterkeeper is informed and believes, and thereon alleges, that the BMPs described in the Jack's Disposal Facility SWPPP are too vague to effectively reduce or prevent pollutants in discharges from all potential pollutant sources at the facility, including sources such as outdoor vehicle storage, maintenance, and fueling, as required by Section A(8) of the Storm Water Permit.

151.   Waterkeeper is informed and believes, and thereon alleges, that the Jack's Disposal Facility SWPPP does not include a summary table of all BMPs to be implemented for each pollutant source, as required by Section A(8) of the Storm Water Permit.

152.   Waterkeeper is informed and believes, and thereon alleges, that the Jack's Disposal Facility Owners and/or Operators failed and continue to fail to develop, implement, and/or revise the Facility SWPPP to achieve compliance with the Storm Water Permit, as required by Provision E(2) and Section A(10)(d) of the Storm Water Permit.

G.    **Defendants' Failure to Comply with the Storm Water Permit's Monitoring and Sampling Requirements.**

153.   Waterkeeper is informed and believes, and thereon alleges, that the Jack's Disposal Facility Owners and/or Operators failed and continue to fail to adequately document and report visual observations of authorized non-storm water discharges, as required by Section B(3) of the Storm Water Permit.

154.   Waterkeeper is informed and believes, and thereon alleges, that the Jack's Disposal Facility Owners and/or Operators failed and continue to fail to adequately document and report visual observations of unauthorized non-storm water discharges, as required by Section B(3) of the Storm Water Permit.

155.   Waterkeeper is informed and believes, and thereon alleges, that the Jack's

1   Disposal Facility Owners and/or Operators failed and continue to fail to conduct monthly
2   visual observations of storm water discharges during the Wet Season, as required by
3   Section B(4) of the Storm Water Permit.

4          156.   Waterkeeper is informed and believes, and thereon alleges, that the Jack's
5   Disposal Facility Owners and/or Operators failed and continue to fail to adequately
6   document and report visual observations of storm water discharges, as required by
7   Section B(4) of the Storm Water Permit.

8          157.   Waterkeeper is informed and believes, and thereon alleges, that the Jack's
9   Disposal Facility Owners and/or Operators failed and continue to fail to collect samples
10   from all discharge locations at the Jack's Disposal Facility, in violation of Section B(5)(a)
11   of the Storm Water Permit.

12          158.   Waterkeeper is informed and believes, and thereon alleges, that the Jack's
13   Disposal Facility Owners and/or Operators failed to collect one storm water sample
14   during the first qualifying rain event of the 2008-2009 Wet Season in the first hour of
15   discharge and/or during a second qualifying rain event in the first hour of discharge, in
16   violation of Sections B(5) and B(7) of the Storm Water Permit.

17          159.   Waterkeeper is informed and believes, and thereon alleges, that the Jack's
18   Disposal Facility Owners and/or Operators failed and continue to fail to analyze all storm
19   water samples collected for ammonia, magnesium, COD, arsenic, cadmium, cyanide,
20   lead, mercury, selenium, silver, iron, aluminum, copper, and zinc, and for all pollutants
21   likely to be present in storm water discharges in significant quantities, including
22   pathogens such as *E. Coli* and coliform bacteria, as required by Section B(5)(c) and Table
23   D of the Storm Water Permit.

24          160.   Waterkeeper is informed and believes, and thereon alleges, that the Jack's
25   Disposal Facility Owners and/or Operators failed and continue to fail to develop,
26   implement, and/or revise the Facility M&RP to achieve compliance with the Storm Water
27   Permit, as required by Provision E(3) and Section B of the Storm Water Permit.
28   ///

Complaint                                    26

**H.     Defendants' Failure to Comply with the Storm Water Permit's Reporting Requirements.**

161.   Waterkeeper is informed and believes, and thereon alleges, that the Jack's Disposal Facility Owners and/or Operators failed and continue to fail to submit Annual Reports that comply with Section B(14) of the Storm Water Permit.

162.   Waterkeeper is informed and believes, and thereon alleges, that the Jack's Disposal Facility Owners and/or Operators failed and continue to fail to submit Annual Reports signed by a duly authorized representative, as required by Sections B(14), C(9), and C(10) of the Storm Water Permit.

163.   Waterkeeper is informed and believes, and thereon alleges, that the Jack's Disposal Facility Owners' and/or Operators' certifications of compliance with the Storm Water Permit in the Facility's Annual Reports are erroneous because the Facility Owners and/or Operators have not revised the Facility SWPPP to achieve compliance with the Storm Water Permit, as required by Sections A(9) and A(10) of the Storm Water Permit.

164.   Waterkeeper is informed and believes, and thereon alleges, that the Jack's Disposal Facility Owners' and/or Operators' certifications of compliance with the Storm Water Permit in the Facility's Annual Reports are erroneous because the Facility Owners and/or Operators have not revised the Facility M&RP to achieve compliance with the Storm Water Permit, as required by Sections B(2), B(3), and B(4) of the Storm Water Permit.

165.   Waterkeeper is informed and believes, and thereon alleges, that the Jack's Disposal Facility Owners and/or Operators have failed and continue to fail to include a summary or evaluation of their visual observations and sampling and analysis results in the Facility's Annual Reports, as required by Section B(14) of the Storm Water Permit.

166.   Waterkeeper is informed and believes, and thereon alleges, that the Jack's Disposal Facility Owners and/or Operators failed and continue to fail to include laboratory reports indicating the results of analyses of the Facility's discharges in the Facility's Annual Reports, as required by Section B(14) of the Storm Water Permit.

167.   Waterkeeper is informed and believes, and thereon alleges, that the Jack's Disposal Facility Owners and/or Operators failed and continue to fail to include ACSCE Reports in the Facility's Annual Reports, as required by Section B(14) of the Storm Water Permit.

168.   Waterkeeper is informed and believes, and thereon alleges, that the Jack's Disposal Facility Owners and/or Operators failed and continue to fail to describe instances of noncompliance with the Storm Water Permit in the Facility's Annual Reports, and steps taken or planned to prevent recurrence of instances of noncompliance with the Storm Water Permit, as required by Section C(11) of the Storm Water Permit.

169.   Waterkeeper is informed and believes, and thereon alleges, that the Jack's Disposal Facility Owners and/or Operators failed and continue to fail to submit written reports to the Regional Board identifying additional BMPs to be implemented at the Facility following the Facility's violations of the Storm Water Permit's Receiving Water Limitations, as required by Receiving Water Limitations C(3) and C(4) of the Storm Water Permit.

## VI.   CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

**Defendants' Discharges of Contaminated Storm Water in Violation of the Storm Water Permit's Effluent Limitation B(3) and the Clean Water Act.**

**33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

170.   Waterkeeper incorporates the allegations contained in the above paragraphs as though fully set forth herein.

171.   Waterkeeper is informed and believes, and thereon alleges, that storm water containing levels of pollutants that does not achieve compliance with the BAT/BCT standards has discharged and continues to discharge from the Jack's Disposal Facility.

172.   Waterkeeper is informed and believes, and thereon alleges, that discharges of storm water containing levels of pollutants that do not achieve compliance with BAT/BCT standards from the Jack's Disposal Facility occur during every storm water

discharge from the Jack's Disposal Facility.

173. The Jack's Disposal Facility Owners and/or Operators violate Effluent Limitation B(3) of the Storm Water Permit each and every time storm water containing levels of pollutants that do not achieve BAT/BCT standards discharges from the Jack's Disposal Facility.

174. Waterkeeper is informed and believes, and thereon alleges, that the Jack's Disposal Facility Owners' and/or Operators' violations of Effluent Limitation B(3) of the Storm Water Permit and the CWA are ongoing and continuous.

175. The Jack's Disposal Facility Owners and/or Operators will continue to be in violation of the Storm Water Permit and the CWA each and every time contaminated storm water discharges from the Jack's Disposal Facility in violation of Effluent Limitation B(3) of the Storm Water Permit.

176. Each and every time the Jack's Disposal Facility Owners and/or Operators discharge contaminated storm water from the Jack's Disposal Facility in violation of Effluent Limitation B(3) of the Storm Water Permit is a separate and distinct violation of section 301(a) of the CWA, 33 U.S.C. § 1311(a).

177. By committing the acts and omissions alleged above, the Jack's Disposal Facility Owners and/or Operators are subject to an assessment of civil penalties for each and every violation of the CWA occurring from 7 November 2008 to the present pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

178. An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiffs and the citizens of the State of California, for which harm Waterkeeper has no plain, speedy, or adequate remedy at law.

WHEREFORE, Plaintiffs pray for judgment against Defendants as set forth hereafter.

///

## SECOND CAUSE OF ACTION

**Defendants' Discharges of Contaminated Storm Water in Violation of Storm Water Permit Receiving Water Limitation C(1) and the Clean Water Act.**

**33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

179.   Waterkeeper incorporates the allegations contained in the above paragraphs as though fully set forth herein.

180.   Waterkeeper is informed and believes, and thereon alleges, that storm water containing levels of pollutants that adversely impact human health and/or the environment has discharged and continues to discharge from the Jack's Disposal Facility.

181.   The Jack's Disposal Facility Owners and/or Operators violate Receiving Water Limitation C(1) of the Storm Water Permit each and every time storm water containing levels of pollutants that adversely impact human health and/or the environment discharges from the Jack's Disposal Facility.

182.   Waterkeeper is informed and believes, and thereon alleges, that the Jack's Disposal Facility Owners' and/or Operators' violations of Receiving Water Limitation C(1) of the Storm Water Permit and the CWA from the Jack's Disposal Facility are ongoing.

183.   The Jack's Disposal Facility Owners and/or Operators will continue to be in violation of the Storm Water Permit and the CWA each and every time contaminated storm water discharges from the Jack's Disposal Facility in violation of Receiving Water Limitation C(1) of the Storm Water Permit.

184.   Each and every violation of Receiving Water Limitation C(1) of the Storm Water Permit is a separate and distinct violation of section 301(a) of the CWA, 33 U.S.C. § 1311(a).

185.   By committing the acts and omissions alleged above, the Jack's Disposal Facility Owners and/or Operators are subject to an assessment of civil penalties for each and every violation of the CWA occurring from 7 November 2008 to the present pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R.

1 | § 19.4.

2 |     186.  An action for injunctive relief under the CWA is authorized by 33 U.S.C.

3 | § 1365(a). Continuing commission of the acts and omissions alleged above would

4 | irreparably harm Plaintiffs and the citizens of the State of California, for which harm

5 | Waterkeeper has no plain, speedy, or adequate remedy at law.

6 |     WHEREFORE, Plaintiffs pray for judgment against Defendants as set forth

7 | hereafter.

8 | **THIRD CAUSE OF ACTION**

9 | **Defendants' Discharges of Contaminated Storm Water in Violation of Storm**

10 | **Water Permit Receiving Water Limitation C(2) and the Clean Water Act.**

11 | **33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

12 |     187.  Waterkeeper incorporates the allegations contained in the above paragraph

13 | as though fully set forth herein.

14 |     188.  Waterkeeper is informed and believes, and thereon alleges, that storm water

15 | containing levels of pollutants that cause or contribute to exceedances of water quality

16 | standards has discharged and continues to discharge from the Jack's Disposal Facility.

17 |     189.  Waterkeeper is informed and believes, and thereon alleges, that discharges

18 | of storm water containing levels of pollutants that cause or contribute to exceedances of

19 | water quality standards from the Jack's Disposal Facility occur during every storm water

20 | discharge from the Jack's Disposal Facility.

21 |     190.  The Jack's Disposal Facility Owners and/or Operators violate Receiving

22 | Water Limitation C(2) of the Storm Water Permit each and every time storm water

23 | containing levels of pollutants that cause or contribute to exceedances of water quality

24 | standards discharges from the Jack's Disposal Facility.

25 |     191.  Waterkeeper is informed and believes, and thereon alleges, that the Jack's

26 | Disposal Facility Owners' and/or Operators' violations of Receiving Water Limitation

27 | C(2) of the Storm Water Permit and the CWA from the Jack's Disposal Facility are

28 | ongoing.

192.   The Jack's Disposal Facility Owners and/or Operators will continue to be in violation of the Storm Water Permit and the CWA each and every time contaminated storm water discharges from the Jack's Disposal Facility in violation of Receiving Water Limitation C(2) of the Storm Water Permit.

193.   Each and every violation of Receiving Water Limitation C(2) of the Storm Water Permit is a separate and distinct violation of section 301(a) of the CWA, 33 U.S.C. § 1311(a).

194.   By committing the acts and omissions alleged above, the Jack's Disposal Facility Owners and/or Operators are subject to an assessment of civil penalties for each and every violation of the CWA occurring from 7 November 2008 to the present pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

195.   An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiffs and the citizens of the State of California, for which harm Waterkeeper has no plain, speedy, or adequate remedy at law.

WHEREFORE, Plaintiffs pray for judgment against Defendants as set forth hereafter.

## FOURTH CAUSE OF ACTION

**Defendants' Discharges of Non-Storm Water in Violation of the Storm Water Permit's Discharge Prohibition A(1) and the Clean Water Act.**

### 33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)

196.   Waterkeeper incorporates the allegations contained in the above paragraphs as though fully set forth herein.

197.   Waterkeeper is informed and believes, and thereon alleges, that prohibited non-storm water has discharged and continues to discharge from the Jack's Disposal Facility in violation of Discharge Prohibition A(1) of the Storm Water Permit each time water used for dust control, truck, vehicle, equipment, and/or parts washing is not

1   prevented from discharging from the Jack's Disposal Facility or is discharged without a
2   separate NPDES permit.

3       198.   Waterkeeper is informed and believe, and thereon alleges, that the Jack's
4   Disposal Facility Owners' and/or Operators' violations of Discharge Prohibition A(1) are
5   ongoing and continuous.

6       199.   The Jack's Disposal Facility Owners and/or Operators will continue to be in
7   violation of the Storm Water Permit and the Clean Water Act each and every time non-
8   storm water discharges from the Jack's Disposal Facility to a water of the United States
9   in violation of Discharge Prohibition (A)(1) of the Storm Water Permit.

10      200.   Each and every violation of Discharge Prohibition A(1) of the Storm Water
11  Permit is a separate and distinct violation of section 301(a) of the CWA, 33 U.S.C.
12  § 1311(a).

13      201.   By committing the acts and omissions alleged above, the Jack's Disposal
14  Facility Owners and/or Operators are subject to an assessment of civil penalties for each
15  and every violation of the CWA occurring from 7 November 2008 to the present pursuant
16  to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R.
17  § 19.4.

18      202.   An action for injunctive relief under the CWA is authorized by 33 U.S.C.
19  § 1365(a). Continuing commission of the acts and omissions alleged above would
20  irreparably harm Plaintiffs and the citizens of the State of California, for which harm
21  Waterkeeper has no plain, speedy, or adequate remedy at law.

22      WHEREFORE, Plaintiffs pray for judgment against Defendants as set forth
23  hereafter.

## FIFTH CAUSE OF ACTION

**Defendants' Failure to Adequately Develop, Implement, and/or Revise a Storm
Water Pollution Prevention Plan in Violation of the Storm Water Permit Section A
and Provision E(2) and Clean Water Act.**

**33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

203.   Waterkeeper incorporates the allegations contained in the above paragraphs as though fully set forth herein.

204.   Waterkeeper is informed and believes, and thereon alleges, that the Jack's Disposal Facility Owners and/or Operators have failed and continue to fail to adequately develop a SWPPP for the Jack's Disposal Facility, in violation of Section A and Provision E(2) of the Storm Water Permit.

205.   Waterkeeper is informed and believes, and thereon alleges, that the Jack's Disposal Facility Owners and/or Operators have failed and continue to fail to adequately implement a SWPPP for the Jack's Disposal Facility, in violation of Section A and Provision E(2) of the Storm Water Permit.

206.   Waterkeeper is informed and believes, and thereon alleges, that the Jack's Disposal Facility Owners and/or Operators have failed and continue to fail to adequately revise a SWPPP for the Jack's Disposal Facility, in violation of Sections A(9) and A(10) of the Storm Water Permit.

207.   The Jack's Disposal Facility Owners and/or Operators have been in violation of Section A and Provision E(2) of the Storm Water Permit at the Jack's Disposal Facility every day from 7 November 2008 to the present.

208.   The Jack's Disposal Facility Owners' and/or Operators' violations of Section A and Provision E(2) of the Storm Water Permit and the CWA at the Jack's Disposal Facility are ongoing and continuous.

209.   The Jack's Disposal Facility Owners and/or Operators will continue to be in violation of Section A and Provision E(2) of the Storm Water Permit and the CWA each and every day the Jack's Disposal Facility Owners and/or Operators fail to adequately develop, implement, and/or revise the SWPPP for the Jack's Disposal Facility.

210.   Each and every violation of the Storm Water Permit's SWPPP requirements at the Jack's Disposal Facility is a separate and distinct violation of the CWA.

211.   By committing the acts and omissions alleged above, the Jack's Disposal Facility Owners and/or Operators are subject to an assessment of civil penalties for each

1   and every violation of the CWA occurring from 7 November 2008 to the present pursuant

2   to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. §

3   19.4.

4        212.   An action for injunctive relief under the CWA is authorized by 33 U.S.C.

5   § 1365(a). Continuing commission of the acts and omissions alleged above would

6   irreparably harm Waterkeeper and the citizens of the State of California, for which harm

7   Waterkeeper has no plain, speedy, or adequate remedy at law.

8        WHEREFORE, Plaintiffs pray for judgment against the Defendants as set forth

9   hereafter.

## SIXTH CAUSE OF ACTION

**Defendants' Failure to Adequately Develop, Implement, and/or Revise a Monitoring and Reporting Program in Violation of the Storm Water Permit and the Clean Water Act.**

**33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

15        213.   Waterkeeper incorporates the allegations contained in the above paragraphs

16   as though fully set forth herein.

17        214.   Waterkeeper is informed and believes, and thereon alleges, that the Jack's

18   Disposal Facility Owners and/or Operators have failed and continue to fail to adequately

19   develop an M&RP for the Jack's Disposal Facility in violation of Section B and

20   Provision E(3) of the Storm Water Permit.

21        215.   Waterkeeper is informed and believes, and thereon alleges, that the Jack's

22   Disposal Facility Owners and/or Operators have failed and continue to fail to adequately

23   implement an M&RP for the Jack's Disposal Facility in violation of Section B and

24   Provision E(3) of the Storm Water Permit.

25        216.   Waterkeeper is informed and believes, and thereon alleges, that the Jack's

26   Disposal Facility Owners and/or Operators have failed and continue to fail to adequately

27   revise an M&RP for the Jack's Disposal Facility in violation of Section B and Provision

28   E(3) of the Storm Water Permit.

217.   The Jack's Disposal Facility Owners and/or Operators have been in violation of the Section B and Provision E(3) of the Storm Water Permit at the Jack's Disposal Facility every day from 7 November 2008 to the present.

218.   The Jack's Disposal Facility Owners' and/or Operators' violations of Section B and Provision E(3) of the Storm Water Permit and the CWA at the Jack's Disposal Facility are ongoing and continuous.

219.   The Jack's Disposal Facility Owners and/or Operators will continue to be in violation of Section B and Provision E(3) the Storm Water Permit and the CWA each and every day they fail to adequately develop, implement, and/or revise an M&RP for the Jack's Disposal Facility.

220.   Each and every violation of the Storm Water Permit's M&RP requirements at the Jack's Disposal Facility is a separate and distinct violation of the CWA.

221.   By committing the acts and omissions alleged above, the Jack's Disposal Facility Owners and/or Operators are subject to an assessment of civil penalties for each and every violation of the CWA occurring from 7 November 2008 to the present pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

222.   An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Waterkeeper and the citizens of the State of California, for which harm Waterkeeper has no plain, speedy, or adequate remedy at law.

WHEREFORE, Plaintiffs pray judgment against the Defendants as set forth hereafter.

## SEVENTH CAUSE OF ACTION

**Defendants' Failure to Report as Required by the Storm Water Permit in Violation of the Storm Water Permit and the Clean Water Act.**

**33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

223.   Waterkeeper incorporates the allegations contained in the above paragraphs

1 | as though fully set forth herein.

2 |     224.  Waterkeeper is informed and believes, and thereon alleges, that the Jack's
3 | Disposal Facility Owners and/or Operators have failed and continue to fail to submit
4 | accurate Annual Reports to the Regional Board in violation of Sections B(14), C(9),
5 | C(10) and C(11) of the Storm Water Permit.

6 |     225.  Waterkeeper is informed and believes, and thereon alleges, that the Jack's
7 | Disposal Facility Owners and/or Operators have failed and continue to fail to submit
8 | complete Annual Reports to the Regional Board in violation of Sections B(14), C(9),
9 | C(10) and C(11) of the Storm Water Permit.

10 |     226.  The Jack's Disposal Facility Owners' and/or Operators' violations of the
11 | reporting requirements of the Storm Water Permit and the CWA are ongoing and
12 | continuous.

13 |     227.  The Jack's Disposal Facility Owners and/or Operators have been in violation
14 | of Sections B(14), C(9), C(10), and C(11) of the Storm Water Permit and the CWA every
15 | day since at least 7 November 2008.

16 |     228.  By committing the acts and omissions alleged above, the Jack's Disposal
17 | Facility Owners and/or Operators are subject to an assessment of civil penalties for each
18 | and every violation of the CWA occurring from 7 November 2008 to the present pursuant
19 | to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R.
20 | § 19.4.

21 |     229.  An action for injunctive relief under the CWA is authorized by 33 U.S.C.
22 | § 1365(a). Continuing commission of the acts and omissions alleged above would
23 | irreparably harm Waterkeeper and the citizens of the State of California, for which harm
24 | Waterkeeper has no plain, speedy, or adequate remedy at law.

25 |     WHEREFORE, Plaintiffs pray judgment against the Defendants as set forth
26 | hereafter.

27 | **VII.   RELIEF REQUESTED**

28 |     230.  Plaintiffs respectfully request that this Court grant the following relief:

1        a.     A Court order declaring Defendants to have violated and to be in violation

2 of the Storm Water Permit and Section 301(a) of the CWA, 33 U.S.C. § 1311(a), for their

3 discharges of pollutants not in compliance with the Storm Water Permit and violations of

4 the substantive and procedural requirements of the Storm Water Permit;

5        b.     A Court order enjoining Defendants from violating the substantive and

6 procedural requirements of the Storm Water Permit and the Clean Water Act;

7        c.     A Court order enjoining Defendants from discharging pollutants not in

8 compliance with a NPDES permit;

9        d.     A Court order assessing civil monetary penalties for each violation of the

10 CWA at $32,500 per day per violation for violations occurring from 7 November 2008

11 through 12 January 2009, as permitted by 33 U.S.C. § 1319(d) and 40 C.F.R. § 19.4;

12        e.     A Court order assessing civil monetary penalties for each violation of the

13 CWA at $37,500 per day per violation for violations occurring since 12 January 2009, as

14 permitted by 33 U.S.C. § 1319(d) and 40 C.F.R. § 19.4;

15        f.     A Court order awarding Plaintiffs their reasonable costs of suit, including

16 attorney, witness, expert, and consultant fees, as permitted by section 505(d) of the Clean

17 Water Act, 33 U.S.C. § 1365(d); and

18        g.     Any other relief as this Court may deem appropriate.

19

20 Dated: December 18, 2013             Respectfully submitted,

21                            LAWYERS FOR CLEAN WATER, INC.

22

23 

24                            Daniel Cooper

25                            Attorney for Plaintiffs

26                            Inland Empire Waterkeeper and Orange
                             County Coastkeeper

27

28



Inland Empire Waterkeeper
*Advocacy • Education • Restoration • Enforcement*

6876 Indiana Avenue, Suite D
Riverside, CA 92506
Phone (951) 530-8823
Fax (951) 530-8824
Website www.iewaterkeeper.org

October 8, 2013

**VIA CERTIFIED MAIL**

Jack's Disposal Service Inc.
Managing Agent
5455 Industrial Pkwy.
San Bernardino, CA 92407

Burrtec Waste Group, Inc.                    Burrtec Waste Industries, Inc.
9890 Cherry Ave.                             9890 Cherry Ave.
Fontana, CA 92335                            Fontana, CA 92335

**VIA U.S MAIL**

Cole Burr                                    Cole Burr
Registered Agent                             Registered Agent
Burrtec Waste Group, Inc.                    Burrtec Waste Industries, Inc.
9890 Cherry Ave.                             9890 Cherry Ave.
Fontana, CA 92335                            Fontana, CA 92335

Re:    **Notice of Violation and Intent to File Suit Under the Clean Water Act**

To Whom It May Concern:

      I am writing on behalf of Inland Empire Waterkeeper and Orange County Coastkeeper (collectively "Waterkeeper") in regard to violations of the Clean Water Act[1] and California's Storm Water Permit[2] occurring at 5455 Industrial Parkway, San Bernardino, California 92407 ("Jack's Disposal Facility" or "Facility"). This letter is being sent to you as the responsible owners and/or operators of the Jack's Disposal Facility, or as the registered agent for those entities. This notice letter puts Jack's Disposal Services, Inc., Burrtec Waste Industries, Inc. and Burrtec Waste Group, Inc. (hereinafter referred to as the "Jack's Disposal Facility Owners and/or Operators") on notice of the violations of the Storm Water Permit occurring at the Jack's Disposal Facility, including, but not limited to, discharges of polluted storm water from the Jack's Disposal Facility into local surface waters. Violations of the Storm Water Permit are violations of the Clean Water Act. As explained below, the Jack's Disposal Facility Owners and/or Operators are liable for violations of the Storm Water Permit and the Clean Water Act.

---

[1] Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*
[2] National Pollution Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ.

Notice of Violation and Intent to File Suit
October 8, 2013
Page 2 of 18

Section 505(b) of the Clean Water Act, 33 U.S.C. § 1365(b), requires that a citizen give notice of his/her intention to file suit sixty (60) days prior to the initiation of a civil action under Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a). Notice must be given to the alleged violator, the Administrator of the United States Environmental Protection Agency ("EPA"), the Regional Administrator of the EPA, the Executive Officer of the water pollution control agency in the State in which the violations occur, and, if the alleged violator is a corporation, the registered agent of the corporation. *See* 40 C.F.R. § 135.2(a)(1).

By this letter issued pursuant to 33 U.S.C. §§ 1365(a) and (b) of the Clean Water Act ("Notice Letter"), Waterkeeper puts the Jack's Disposal Facility Owners and/or Operators on notice that, after the expiration of sixty (60) days from the date of this Notice Letter, Waterkeeper intends to file an enforcement action in Federal court against them for violations of the Storm Water Permit and the Clean Water Act.

## I.   BACKGROUND

### A.  <u>Inland Empire Waterkeeper and Orange County Coastkeeper</u>

Inland Empire Waterkeeper's office is located at 6876 Indiana Avenue, Suite D, Riverside, California 92506. Inland Empire Waterkeeper is a chapter of Orange County Coastkeeper. Orange County Coastkeeper is a non-profit public benefit corporation organized under the laws of the State of California with its office at 3151 Airway Avenue, Suite F-110, Costa Mesa, California 92626. Together, Inland Empire Waterkeeper and Orange County Coastkeeper have over 2,000 members who live and/or recreate in and around San Bernardino County and the Santa Ana River watershed. Inland Empire Waterkeeper and Orange County Coastkeeper are dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of their local watersheds, including the Santa Ana River and its tributaries. To further these goals, Waterkeeper actively seeks federal and state agency implementation of the Clean Water Act and, where necessary, directly initiates enforcement actions on behalf of itself and its members.

Members of Waterkeeper use and enjoy the waters into which the Jack's Disposal Facility discharges, including the Santa Ana River, and its tributaries. Members of Waterkeeper use and enjoy the Santa Ana River and its tributaries to picnic, hike, view wildlife, and engage in scientific study, including monitoring activities, among other things. Procedural and substantive violations including, but not limited to the discharge of pollutants from the Jack's Disposal Facility, impairs these uses. Further, these violations are ongoing and continuous. Thus, the interests of Waterkeeper's members have been, are being, and will continue to be adversely affected by the Jack's Disposal Facility Owners' and/or Operators' failure to comply with the Clean Water Act and the Storm Water Permit.

### B.  <u>The Owners and/or Operators of the Jack's Disposal Facility</u>

Prior to beginning industrial operations, dischargers are required to apply for coverage under the Storm Water Permit by submitting a Notice of Intent ("NOI") to the State Water

Notice of Violation and Intent to File Suit
October 8, 2013
Page 3 of 18

Resources Control Board ("State Board") to obtain Storm Water Permit coverage. *See* Storm Water Permit, Finding #3. The State Board approved the Jack's Disposal Facility NOI on November 3, 2003. The State Board's letter acknowledging receipt of the Jack's Disposal Facility's NOI identifies the facility name and address as "Jacks Disposal Service Inc, 5455 Industrial Pkwy, San Bernardino" and identifies the facility operator as "Burrtec Waste Industries Inc." A second NOI dated July 9, 2012, which is unsigned, contains the same information. The Waste Discharge Identification ("WDID") number is listed as 8-36I018452.

Information available to Waterkeeper indicates that Burrtec Waste Industries, Inc. is an owner and/or operator of the Jack's Disposal Facility. Information available to Waterkeeper indicates that Burrtec Waste Group, Inc. is also an owner and/or operator of the Jack's Disposal Facility. Burrtec Waste Group, Inc. and Burrtec Waste Industries, Inc. are active corporations registered in California. The registered agent for both corporations is Cole Burr, 9890 Cherry Avenue, Fontana, California 92335.

Information available to Waterkeeper also indicates that there are at least two additional corporations and one limited liability company operating at 5455 Industrial Parkway, San Bernardino, California 92407: Jack's Disposal Inc., Currans Rubbish Disposal, Inc., and Empire Disposal, LLC. Empire Disposal, LLC is owned by Burrtec Waste Group, Inc., while Jack's Disposal, Inc. and Currans Rubbish Disposal, Inc. are owned by Burr Group, Inc.

The Jack's Disposal Facility Owners and/or Operators have violated and continue to violate the procedural and substantive terms of the Storm Water Permit, including, but not limited to, the illegal discharge of pollutants from the Jack's Disposal Facility into local surface waters. As explained herein, the Jack's Disposal Facility Owners and/or Operators are liable for violations of the Storm Water Permit and the Clean Water Act, and are put on notice of these violations.

## C. Storm Water Pollution and the Waters Receiving the Jack's Disposal Facility's Discharges

With every significant rainfall event, millions of gallons of polluted storm water originating from industrial operations such as the Jack's Disposal Facility pour into storm drains and local waterways. The consensus among agencies and water quality specialists is that storm water pollution accounts for more than half of the total pollution entering surface waters each year. Such discharges of pollutants from industrial facilities contribute to the impairment of downstream waters and adversely impact aquatic-dependent wildlife. These contaminated discharges can and must be controlled for downstream ecosystems to regain their health.

Storm water discharges from hazardous waste treatment, storage, or disposal facilities, like the Jack's Disposal Facility, contain pollutants such as: oil and grease ("O&G"); hydraulic fluids; transmission fluid; antifreeze; total suspended solids ("TSS"); heavy metals (such as copper, iron, lead, aluminum, and zinc); pathogens; and nutrients. Many of these pollutants are on the list of chemicals published by the State of California as known to cause cancer, birth defects, and/or developmental or reproductive harm. Discharges of polluted storm water to the

Notice of Violation and Intent to File Suit
October 8, 2013
Page 4 of 18

Santa Ana River and its tributaries pose carcinogenic and reproductive toxicity threats to the public and adversely affect the aquatic environment.

The Jack's Disposal Facility discharges into Cable Creek, then into Cajon Canyon Creek, and Lytle Creek, which discharges into the Santa Ana River ("Receiving Waters"). The Santa Ana River and its tributaries are ecologically sensitive areas. Although pollution and habitat destruction have drastically diminished once-abundant and varied fisheries, the Receiving Waters are still essential habitat for dozens of fish, bird, and invertebrate species. Pollutants from facilities such as the Jack's Disposal Facility harm the special aesthetic and recreational significance that the Receiving Waters have for people in the surrounding communities, including Waterkeeper's members. The public's use of the Receiving Waters for water contact sports exposes people to toxic metals and other contaminants in storm water and non-storm water discharges. Non-contact recreational and aesthetic opportunities, such as wildlife observation, are also impaired by polluted discharges to the Receiving Waters.

The California Regional Water Quality Control Board, Santa Ana Region Regional Board ("Regional Board") issued the *Santa Ana River Basin Water Quality Control Plan* ("Basin Plan"). The Basin Plan identifies the "Beneficial Uses" of water bodies in the region. The Beneficial Uses for Lytle Creek and the Santa Ana River near or downstream of the point at which it receives polluted storm water discharges from the Jack's Disposal Facility (i.e., Santa Ana River Reaches 1 – 4) include: Agricultural Supply; Groundwater Recharge; Water Contact Recreation; Non-contact Water Recreation; Warm Freshwater Habitat; Wildlife Habitat; and Rare, Threatened or Endangered Species. *See* Basin Plan at Table 3-1. According to the 2010 303(d) List of Impaired Water Bodies, Lytle Creek is impaired for pathogens; Reach 4 of the Santa Ana River (into which Lytle Creek drains) is impaired for pathogens; Reach 3 of the Santa Ana River is impaired for copper, lead, and pathogens; and Reach 2 of the Santa Ana River is impaired for indicator bacteria.[3] Polluted discharges from industrial sites such as the Jack's Disposal Facility contribute to the degradation of these already impaired surface waters and of the ecosystems that depend on these waters.

## II.  JACK'S DISPOSAL FACILITY AND ASSOCIATED DISCHARGES OF POLLUTANTS

### A. Jack's Disposal Facility Site Description

The Jack's Disposal Facility is 5 acres in size. According to the Facility's SWPPP, there are two structures on the Facility property. One structure is a shop area, which is used for vehicle and equipment maintenance, storage of materials associated with vehicle and equipment maintenance, vehicle and equipment storage, and offices. Vehicles repaired in the shop include, but are not limited to, large landfill equipment and sanitation trucks. The second structure is an office building, located in the northwestern corner of the Facility property. The remaining portion of the western side of the property along Industrial Parkway is used for employee

---

[3] 2010 Integrated Report – All Assessed Waters, available at:
http://www.waterboards.ca.gov/water_issues/programs/tmdl/integrated2010.shtml (last accessed on September 4, 2013).

Notice of Violation and Intent to File Suit
October 8, 2013
Page 5 of 18

parking. Trucks are parked uncovered in the southern portion of the property, and along the
eastern border of the Facility is an uncovered area used for storing vehicle and equipment parts,
an uncovered area for vehicle cleaning operations, and an uncovered area used for storage of
metal and plastic solid waste collection bins. The Facility also houses an underground fuel tank,
a fuel island, an uncovered truck scale, and storage areas for waste oil, motor oil, waste batteries,
bulk oil, and solvent throughout the site. Two points of ingress/egress are located along the
western side of the Facility along Industrial Parkway.

### B. Jack's Disposal Facility Industrial Activities and Associated Pollutants

According to the Storm Water Pollution Prevention Plan ("SWPPP"), the Facility
functions as a service facility for Burrtec Waste Industries, Inc.'s large equipment, office
administration, and storage. The Jack's Disposal Facility Owners' and/or Operators' industrial
activities are pollutant sources and include, but are not limited to: maintenance and repair of
vehicles and equipment; vehicle and equipment cleaning operations; vehicle and equipment
fueling; vehicle and equipment storage; and fuel and hazardous materials storage, including
storage of motor oil, hydraulic/lube oil, degreasers, paints, cleaning detergents and solvents.

Information available to Waterkeeper indicates that the Standard Industrial Classification
("SIC") Code for the Jack's Disposal Facility is 4212 (Motor Freight Transportation and
Warehousing), 4953 (Hazardous Waste Treatment Storage or Disposal), and 5093 (Processing,
Reclaiming, and Wholesale Distribution of Scrap and Waste Materials).[4] Facilities classified
under SIC Codes 4953 and 5093 require Storm Water Permit coverage for the entire facility.

For facilities classified as SIC Code 4212, the Storm Water Permit requires permit
coverage for "vehicle maintenance shops, equipment cleaning operations, or airport deicing
operations." Storm Water Permit, Attachment 1. The Storm Water Permit regulates the portions
of the facility which are used for "vehicle maintenance (including vehicle rehabilitation,
mechanical repairs, painting, fueling, and lubrication) or other operations identified herein that
are associated with industrial activity." Storm Water Permit, Attachment 1; *see also* Storm Water
Permit, Attachment 4 (stating that "storm water associated with industrial activity" includes
storm water discharges from material handling activities and storage areas for material handling
equipment). Waterkeeper puts the Jack's Disposal Facility Owners and/or Operators on notice
that one or more of these regulated activities is conducted at locations throughout the entire
Jack's Disposal Facility, and thus the entire Facility requires Storm Water Permit coverage. In
addition, even if the regulated industrial activities are not occurring throughout the entire Facility
at all times, under the Storm Water Permit's definition of "storm water associated with industrial
activities" and explanation of material handling activities, Waterkeeper puts the Jack's Disposal
Facility Owners and/or Operators on notice that since no best management practices ("BMPs")
or other controls exist to separate the storm water flows from portions of the Facility where non-
regulated activities may occur from storm water flows from the regulated industrial activities,
storm water at the Facility commingles and thus, all storm water discharges from the Facility are

---

[4] The Facility's 2008-2009 Annual Report lists the following SIC Codes: 4212, 4953, and 5090. Given the
consistency with which the other Annual Reports list the SIC Code 5093, not 5090, for the Facility, Waterkeeper
assumes the listing of SIC Code 5090 was a typographical error and should have been "5093."

Notice of Violation and Intent to File Suit
October 8, 2013
Page 6 of 18

regulated under the Storm Water Permit.

The Jack's Disposal Facility SWPPP identifies the following pollutants associated with operations at Facility: metals, organic compounds from solvents and cleaning compounds, O&G; and trash and debris. Information available to Waterkeeper indicates that additional pollutants associated with solid waste vehicle and equipment maintenance facilities include, but are not limited to: hydraulic fluids; transmission fluid; antifreeze; TSS; pathogens; and nutrients.

Information available to Waterkeeper indicates that fueling, storage of vehicles and bins, vehicle washing, and other industrial activities occur at the Jack's Disposal Facility without adequate cover to prevent storm water and non-storm water exposure to pollutant sources, and without secondary containment or other measures to prevent polluted storm water and non-storm water from discharging from the Jack's Disposal Facility. Additionally, information available to Waterkeeper indicates that pollutants are tracked out of the shop building, causing pollutants associated with vehicle maintenance to come into contact with storm water. The resulting illegal discharges of polluted water impact Waterkeeper's members' use and enjoyment of the Receiving Waters by degrading the quality of the Receiving Waters and by posing risks to human health and aquatic life.

## C. Jack's Disposal Facility Storm Water Flow and Discharge Locations

The Jack's Disposal Facility SWPPP indicates that the entire Facility drains westward, toward Industrial Parkway. The site map identifies two discharge points: one located at the northwest corner of the Facility and the other located at the southwest corner of the Facility. The Jack's Disposal Facility Owners and/or Operators indicate that the Facility has one discharge point, identified as "S/W Front Gate," in their 2007-2008, 2008-2009, 2009-2010, 2010-2011, and 2011-2012 Annual Reports, and as "MP1" in their 2012-2013 Annual Report.

However, based on Waterkeeper's review of the Facility's SWPPP site map, there are at least five discharge points at the Jack's Disposal Facility. These discharge points include, but are not limited to: (1) the discharge point identified in the site map on the northwest corner of the Facility; (2) the discharge point identified on the site map in the southwest corner of the Facility; (3) the northern curb of the northern driveway, along which water flows to Industrial Parkway; (4) the southern curb of the northern driveway, along which water flows to Industrial Parkway, and/or at the drain outlet located near the southern curb of the northern driveway; and (5) the northern curb of the southern driveway, along which water flows to Industrial Parkway. Further, the Annual Reports for the Facility conflict in the number of reported discharge points, including stating that the Facility has 2 discharge points (2008-2009 and 2012-2013 Annual Reports), 3 discharge points (2009-2010 Annual Report), and 4 discharge points (2010-2011 and 2011-2012 Annual Reports).

Additionally, the Facility SWPPP states that the shop area is equipped with floor drain(s) that flow to a clarifier. The SWPPP only states that the clarifier is "regularly maintained," but does not describe the capacity of the clarifier or to where it discharges when its capacity is exceeded. Unmarked rectangles with flow arrows pointing to the middle of the rectangles are

Notice of Violation and Intent to File Suit
October 8, 2013
Page 7 of 18

also indicated on the SWPPP site map on the eastern border of the Facility, but there is no indication of where storm water flowing into these areas is discharged. Thus, Waterkeeper puts the Jack's Disposal Facility Owners and/or Operators on notice that the Facility contains at least five (5) discharge points, but may update this number as additional information becomes available.

## III.   VIOLATIONS OF THE CLEAN WATER ACT AND THE STORM WATER PERMIT

### A.   Discharges of Polluted Storm Water from the Jack's Disposal Facility in Violation of Effluent Limitation B(3) of the Storm Water Permit

Effluent Limitation B(3) of the Storm Water Permit requires dischargers to reduce or prevent pollutants associated with industrial activity in storm water discharges through implementation of BMPs that achieve best available technology economically achievable ("BAT") for toxic pollutants[5] and best conventional pollutant control technology ("BCT") for conventional pollutants.[6] EPA's Industrial Storm Water Permit contains benchmark values, which are objective standards for evaluating whether a permittee's BMPs achieve compliance with BAT/BCT, as required by Effluent Limitation B(3) of the Storm Water Permit ("EPA Benchmarks").[7]

Storm water sampling at the Jack's Disposal Facility demonstrates that concentrations of pollutants in storm water discharges repeatedly exceed applicable EPA Benchmarks. Attachment A contains a table with the dates on which storm water samples collected from the Jack's Disposal Facility since October 8, 2008 exceed one or more EPA Benchmarks.

The continued and repeated exceedances of EPA Benchmarks demonstrate that the Jack's Disposal Facility Owners and/or Operators have failed to develop and/or implement required BMPs at the Jack's Disposal Facility that achieve compliance with the BAT/BCT standards. Waterkeeper puts the Jack's Disposal Facility Owners and/or Operators on notice that they violate Effluent Limitation B(3) of the Storm Water Permit each time storm water discharges from the Facility without BMPs that achieve BAT/BCT, including but not limited to the dates identified in Attachment A. These violations are ongoing and will continue every time the Jack's Disposal Facility Owners and/or Operators discharges polluted storm water without developing and/or implementing BMPs that achieve compliance with the BAT/BCT standards. Waterkeeper will update the dates of violations when additional information and data become available. Each time the Jack's Disposal Facility Owners and/or Operators discharge polluted storm water in violation of Effluent Limitation B(3) of the Storm Water Permit is a separate and distinct violation of the Storm Water Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. §

---

[5] Toxic pollutants are listed at 40 C.F.R. § 401.15 and include copper and lead, among others.
[6] Conventional pollutants are listed at 40 C.F.R. § 401.16 and include BOD, TSS, O & G, pH, and fecal coliform.
[7] See United States Environmental Protection Agency (EPA) National Pollutant Discharge Elimination System (NPDES) Multi-Sector General Permit for Stormwater Discharges Associated with Industrial Activity (MSGP) Authorization to Discharge Under the National Pollutant Discharge Elimination System, as modified effective May 27, 2009 ("Multi-Sector Permit"), Fact Sheet at 106; see also, 73 Federal Register 56572 (2008).

Notice of Violation and Intent to File Suit
October 8, 2013
Page 8 of 18

1311(a). The Jack's Disposal Facility Owners and/or Operators are subject to civil penalties for all violations of the Clean Water Act occurring since October 8, 2008.

**B.   Discharges of Polluted Storm Water from the Jack's Disposal Facility in Violation of Receiving Water Limitations C(1) and C(2) of the Storm Water Permit**

Receiving Water Limitation C(1) of the Storm Water Permit prohibits storm water discharges and authorized non-storm water discharges to surface water or groundwater that adversely impact human health or the environment. Discharges that contain pollutants in concentrations that exceed levels known to adversely impact aquatic species and the environment constitute violations of Receiving Water Limitation C(1) of the Storm Water Permit. Receiving Water Limitation C(2) of the Storm Water Permit prohibits storm water discharges and authorized non-storm water discharges that cause or contribute to an exceedance of an applicable Water Quality Standards ("WQS").[8] Applicable WQSs include, among others, the Criteria for Priority Toxic Pollutants in the State of California, 40 C.F.R. § 131.38 ("CTR"). Basin Plan sets out additional WQSs, including WQSs for total coliform and fecal coliform when the Beneficial Uses of a lake or stream include Municipal and Domestic Supply, Non-contact Water Recreation, and Water Contact Recreation, such as the Receiving Waters. Discharges that contain pollutants in excess of an applicable WQSs violate Receiving Water Limitation C(2) of the Storm Water Permit and the Clean Water Act.

Information available to Waterkeeper indicates that storm water discharges from the Jack's Disposal Facility contain elevated concentrations of pollutants such as copper, lead, zinc, and pathogens, including coliform bacteria and *Escherichia coli*, among others. The Receiving Waters are impaired for copper, lead, and pathogens. Information available to Waterkeeper indicates that storm water discharges from the Jack's Disposal Facility containing elevated concentrations of pollutants can be acutely toxic and/or have sub-lethal impacts on the avian and aquatic wildlife in the Receiving Waters. Information available to Waterkeeper further indicates that storm water discharges from the Jack's Disposal Facility containing elevated concentrations of pollutants cause or contribute to a violation of an applicable WQS.

The repeated and significant exceedances of WQS demonstrate that the Jack's Disposal Facility Owners and/or Operators have violated and continue to violate Receiving Water Limitation C(1) and/or Receiving Water Limitation C(2). Attachment A contains a table with the dates on which storm water samples collected from the Jack's Disposal Facility since October 8, 2008 exceed one or more CTR criteria.

Waterkeeper puts Jack's Disposal Facility Owners and/or Operators on notice that they violate Receiving Water Limitation C(1) and/or Receiving Water Limitation C(2) each time storm water discharges from the Facility containing pollutants that adversely affect human health or the environment and/or cause or contribute to a violation of an applicable WQS. Each time

---

[8] WQS include pollutant concentration levels determined by the State Water Resources Control Board and the EPA to be protective of the Beneficial Uses of the Receiving Water. Discharges above WQS contribute to the impairment of the Receiving Water's Beneficial Uses.

Notice of Violation and Intent to File Suit
October 8, 2013
Page 9 of 18

that discharges of storm water from the Jack's Disposal Facility adversely impact human health or the environment is a separate and distinct violation of Receiving Water Limitation C(1) of the Storm Water Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a). Each time that discharges of storm water from the Jack's Disposal Facility cause or contribute to a violation of an applicable WQS is a separate and distinct violation of Receiving Water Limitation C(2) of the Storm Water Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a). These discharge violations are ongoing and Waterkeeper will update the dates of violation when additional information and data becomes available. The Jack's Disposal Facility Owners and/or Operators are subject to civil penalties for all violations of the Clean Water Act occurring since at least October 8, 2008.

## C. Unauthorized and Authorized Non-Storm Water Discharges from the Jack's Disposal Facility in Violation of Discharge Prohibition A(1) of the Storm Water Permit

Except as allowed in Special Conditions D(1) of the Storm Water Permit, Discharge Prohibition A(1) prohibits permittees from discharging materials other than storm water (non-storm water discharges) either directly or indirectly to waters of the United State. Prohibited non-storm water discharges must be either eliminated or permitted by a separate NPDES permit. Storm Water Permit, Discharge Prohibition A(1).

Information available to Waterkeeper indicates that unauthorized non-storm water discharges occur at the Facility from dust control, truck, vehicle, equipment, and/or parts cleaning and washing that is conducted on-site. These non-storm water discharges are not from sources that are listed among the authorized non-storm water discharges in Special Conditions D(1) of the Storm Water Permit and thus are always prohibited without a separate NPDES permit. Information available to Waterkeeper indicates that the Jack's Disposal Facility Owners and/or Operators have not obtained a separate NPDES permit for the Facility's unauthorized non-storm water discharges, as thus these discharges are in violation of Discharge Prohibition A(1) of the Storm Water Permit.

Certain non-storm water discharges are allowed, such as fire hydrant flushing, drinking fountain water, and landscape watering, only if all requirements under Special Conditions D(1) of the Storm Water Permit are met. Special Conditions D(1) requires, among other things, the development and implementation of BMPs, which must be specifically listed in the SWPPP, to prevent or reduce the contact of non-storm water discharges with significant materials or equipment. The non-storm water discharges also cannot contain significant quantities of pollutants. The Jack's Disposal Facility Owners and/or Operators stated in every Annual Report since the 2009-2010 Wet Season[9] that they observed authorized non-storm water discharges at the Facility, but do not describe the source of these non-storm water discharges, as required by Special Conditions D(1)(b)(v). In addition, the SWPPP fails to include BMPs for these "authorized" non-storm water discharges, and information available to Waterkeeper indicates that the non-storm water discharges contain significant quantities of pollutants. Thus, even if the

---

[9] The Wet Season is defined as October 1 – May 31.

Notice of Violation and Intent to File Suit
October 8, 2013
Page 10 of 18

non-storm water discharges are from one of the sources listed in Special Conditions D(1), they are still prohibited because the Special Conditions in Provision D(1) have not been met. Therefore, the "authorized" non-storm water discharges observed by the Jack's Disposal Facility Owners and/or Operators are in violation of Discharge Prohibition A(1) of the Storm Water Permit.

Waterkeeper puts the Jack's Disposal Facility Owners and/or Operators on notice that Discharge Prohibition A(1) is violated each time non-storm water discharges occur at the Facility. These discharge violations are ongoing and will continue until the Jack's Disposal Facility Owners and/or Operators develop and implement BMPs that prevent prohibited non-storm water discharges, or obtain separate NPDES permit coverage. Each time the Jack's Disposal Facility Owners and/or Operators discharge prohibited non-storm water in violation of Discharge Prohibition A(1) of the Storm Water Permit is a separate and distinct violation of the Storm Water Permit and section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a). Jack's Disposal Facility Owners and/or Operators are subject to civil penalties for all violations of the Clean Water Act occurring since October 8, 2008.

### D. Failure to Develop, Implement and/or Revise an Adequate Storm Water Pollution Prevention Plan

Section A(1) and Provision E(2) of the Storm Water Permit requires dischargers to develop and implement a SWPPP by October 1, 1992, or prior to beginning industrial activities, that meets all of the requirements of the Storm Water Permit. The objective of the SWPPP requirement is to identify and evaluate sources of pollutants associated with industrial activities that may affect the quality of storm water discharges, and to implement site-specific BMPs to reduce or prevent pollutants associated with industrial activities in storm water discharges. Storm Water Permit, Section A(2). These BMPs must achieve compliance with the Storm Water Permit's Effluent Limitations and Receiving Water Limitations. To ensure compliance with the Storm Water Permit, the SWPPP must be evaluated on an annual basis pursuant to the requirements of Section A(9). The SWPPP must also be revised as necessary to ensure compliance with the Storm Water Permit. *Id.* Sections A(9) and A(10).

Sections A(3) – A(10) of the Storm Water Permit set forth the requirements for a SWPPP. Among other information, the SWPPP must include: identification of individual(s) and their responsibilities in developing, implementing, and revising the facility's SWPPP (*see* Storm Water Permit Section A(3)(a)); a site map with information including storm water drainage areas with flow patterns, nearby water bodies, and the location of the storm water collection and conveyance system and associated points of discharge (*see id.,* Section A(4)); and a list of significant materials handled and stored at the facility (*see id.,* Section A(5)). Sections A(7) and A(8) require an assessment of potential pollutant sources at the facility and a description of the BMPs to be implemented at the facility that will reduce or prevent pollutants in storm water discharges and authorized non-storm water discharges, including structural BMPs where non-structural BMPs are not effective.

Information available to Waterkeeper indicates that the Jack's Disposal Facility Owners and/or Operators have been conducting and continue to conduct operations at the Jack's Disposal Facility with an inadequately developed, implemented, and/or revised SWPPP. First, the SWPPP does not identify all of the specific individuals responsible for implementing the SWPPP and monitoring program activities, as required by Section A(3) of the Storm Water Permit. Although the SWPPP includes a table identifying individuals on the "Stormwater Pollution Prevention Team," it later states that the required annual and weekly inspections will be conducted by the "Environmental Coordinator" and that the "BMP Implementation Committee" will meet to consider changes to the Facility's BMPs and SWPPP. However, neither the Environmental Coordinator or the BMP Implementation Committee are positions on the Stormwater Pollution Prevention Team, and thus no individuals are identified to fill these roles.

Next, the site map does not include all of the requirements of Section A(4) of the Storm Water Permit. For example, the site map does not include: an outline of all storm water drainage areas within the facility boundaries; portions of the drainage area impacted by run-on from surrounding areas; areas of soil erosion; nearby water bodies; municipal storm drain inlets where the Facility's storm water and authorized non-storm water discharges may be received; an outline of all impervious areas of the facility; locations where materials are directly exposed to precipitation; and all areas of industrial activity. Additionally, the site map included with the SWPPP lacks labels, legends, or other data to ensure that that map is understandable. For example, the site map seems to indicate that water flows toward what appear to be drains in the vehicle wash area, but does not label these rectangles or show where the water ultimately flows.

In addition, the Jack's Disposal Facility SWPPP does not include a list of significant materials handled and stored at the site, in violation of Section A(5) of the Storm Water Permit. Further, without this list, all of the other details about the significant materials are also missing, including the locations where each material is stored, received, shipped, and handled, and the typical quantities and frequency of each material at the site.

The SWPPP also does not properly describe all of the potential pollutant sources at the Jack's Disposal Facility, in violation of Sections A(6) and A(7) of the Storm Water Permit. In fact, the description in the SWPPP of what areas of the Facility are *not* potential pollutant sources is longer than the description of the areas that are potential pollutant sources, which only briefly states, "Outside storage areas, the wash rack area, and parking lot areas . . . are exposed to storm events." This one sentence does not include all of the other potential pollutant sources at the Facility, such as the parts storage areas, tracking, trash container storage area, fuel island, truck scale, and waste battery storage area. The other details about the industrial processes, material handling and storage areas, dust and particulate generating areas, and soil erosion are also not included to the extent required for compliance with Section A(6) of the Storm Water Permit, nor is the assessment of the potential pollutant sources included in the SWPPP, as required by Section A(7) of the Storm Water Permit.

Finally, the limited BMPs listed in the Facility SWPPP are not sufficient to comply with the requirements of Section A(8) of the Storm Water Permit. First, since the SWPPP does not describe any potential pollutant sources, the SWPPP also does not properly link the BMPs to be

implemented at the Facility to the potential pollutants and sources, as required by the Storm Water Permit. Second, the BMPs that are listed are too vague to effectively reduce or prevent pollutants in discharges. For example, the only structural BMPs listed in the SWPPP are that "significant storage is done inside" and parts areas are largely adjacent to water clarifiers and cleaned prior to storage. However, these BMPs do not address the many other potential pollutant sources at the Facility, such as outdoor vehicle storage, maintenance, and fueling. Third, the SWPPP does not include a summary table of all BMPs to be implemented for each pollutant source, as required by Section A(8) of the Storm Water Permit. The inadequacies of the existing BMPs are further evident, given that even though the SWPPP was apparently revised in 2011 and 2012, storm water samples taken since these revisions demonstrate continued exceedances of EPA Benchmarks and WQSs. Thus, Waterkeeper believes and thereon alleges that the Jack's Disposal Facility continues to operate with an inadequately developed, implemented, and/or revised SWPPP, in violation of the Storm Water Permit.

Waterkeeper puts the Jack's Disposal Facility Owners and/or Operators on notice that they violate Section A and Provision E(2) of the Storm Water Permit and the Clean Water Act every day that they operate the Jack's Disposal Facility with an inadequately developed, implemented, and/or revised SWPPP. Every day that the Jack's Disposal Facility Owners and/or Operators operate the Facility with an inadequately developed, implemented, and/or revised SWPPP is a separate and distinct violation of the Storm Water Permit and the Clean Water Act. The Jack's Disposal Facility Owners and/or Operators have been in daily and continuous violation of the Storm Water Permit's SWPPP requirements. These violations are ongoing and Waterkeeper will include additional violations in its enforcement action. The Jack's Disposal Facility Owners and/or Operators are subject to civil penalties for all violations of the Clean Water Act occurring since October 8, 2008.

### E. Failure to Develop, Implement, and/or Revise an Adequate Monitoring and Reporting Program

Section B(1) and Provision E(3) of the Storm Water Permit require facility operators to develop and implement a monitoring and reporting plan ("M&RP") by October 1, 1992, or when industrial activities begin at the facility, that meets all of the requirements of the Storm Water Permit. The primary objective of the M&RP is to detect and measure the concentrations of pollutants in a facility's discharge to ensure compliance with the Storm Water Permit's Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations. *See* Storm Water Permit, Section B(2). The M&RP must therefore ensure that BMPs are effectively reducing and/or eliminating pollutants at the facility, and are evaluated and revised whenever appropriate to ensure compliance with the Storm Water Permit. *See id.* Dischargers must also revise the M&RP as necessary for compliance with the Storm Water Permit. *See id.*; *see also* Storm Water Permit, Section B(4).

Sections B(3) – B(16) of the Storm Water Permit set forth the M&RP requirements. Specifically, Section B(3) requires dischargers to conduct quarterly visual observations of all drainage areas within their facility for the presence of authorized and unauthorized non-storm water discharges. Section B(4) requires dischargers to conduct visual observations of storm

water discharges during the first hour of discharge at each discharge point of at least one storm event per month during the Wet Season. Sections B(3) and (4) further require dischargers to document the presence of any floating or suspended material, O&G, discolorations, turbidity, odor and the source of any pollutants when conducting visual observations. Dischargers must maintain records of observations, observation dates, locations observed, and responses taken to eliminate unauthorized non-storm water discharges and to reduce or prevent pollutants from contacting non-storm water and storm water discharges. Storm Water Permit, Sections B(3) and (4).

Sections B(5) and B(7) of the Storm Water Permit require dischargers collect samples of storm water discharges from all locations where storm water is discharged. Under Section B(5) of the Storm Water Permit, the Jack's Disposal Facility Owners and/or Operators are required to collect at least two samples from each discharge point during each Wet Season, including one sample from the first storm event of the Wet Season. These samples must be taken during the first hour of discharge. Storm water samples shall be analyzed for TSS, pH, specific conductance, and total organic carbon or O&G. Storm Water Permit, Section B(5)(c)(i). These samples must also be analyzed for toxic pollutants and other pollutants that are likely to be present in storm water discharges in significant quantities. Storm Water Permit, Section B(5)(c)(ii). Table D of the Storm Water Permit also requires facilities operating under SIC Codes 4212, 4953, and 5093, such as the Jack's Disposal Facility, to also analyze the facility's storm water samples for the following parameters: Ammonia ("$NH_3$"), Magnesium ("Mg"), Chemical Oxygen Demand ("COD"), Arsenic ("As"), Cadmium ("Cd"), Cyanide ("Cn"), Lead ("Pb"), Mercury ("Hg"), Selenium ("Se"), Silver ("Ag"), Iron ("Fe"), Aluminum ("Al"), Copper ("Cu"), and Zinc ("Zn").

Information available to Waterkeeper indicates that the Jack's Disposal Facility Owners and/or Operators have been conducting operations at the Jack's Disposal Facility with an inadequately developed, implemented, and/or revised M&RP. For example, the Jack's Disposal Facility Owners and/or Operators failed to provide the required information for their visual observations of all authorized non-storm water discharges at the Facility during the 2008-2009, 2009-2010, 2010-2011, and 2012-2013 Wet Seasons and in the Facility's 2010-2011 Annual Report even admitted that this failure was due to inexperience and lack of training. The Jack's Disposal Facility Owners and/or Operators also failed to provide the required information for their visual observations of all unauthorized non-storm water discharges at the Facility for the 2009-2010 and 2010-2011 Wet Seasons. Because the Jack's Disposal Facility Owners and/or Operators failed to take visual observations of authorized and unauthorized non-storm water discharges as required, they also failed to document the presence of any floating or suspended material, O&G, discolorations, turbidity, odor, or the source of any pollutants, in violation of Section B(3) of the Storm Water Permit.

Second, the Jack's Disposal Facility Owners and/or Operators fail to conduct monthly visual observations of storm water discharges as required by Section B(4) of the Storm Water Permit. Specifically, the Jack's Disposal Facility Owners and/or Operators failed to conduct any monthly visual observations during the 2009-2010 and 2010-2011 Wet Seasons, and admitted in the Facility's 2010-2011 Annual Report that this was due to oversight and inexperience.

Notice of Violation and Intent to File Suit
October 8, 2013
Page 14 of 18

Additionally, in the 2008-2009 Annual Report, the Jack's Disposal Facility Owners and/or Operators only reported visual observations in November and December and then claimed that there were no qualifying storm events in any other months, yet they collected a sample from a storm event in February 2009. Similarly, in the Facility's 2011-2012 Annual Report, the Jack's Disposal Facility Owners and/or Operators wrote "no rain" for every month during the Wet Season as a reason for not performing the required visual observations, yet also collected samples from storm events in October and December, indicating that storm events occurred during at least these two months. Further, many of the visual observations conducted during the 2012-2013 Wet Season did not occur during the first hour of discharge, as required by the Storm Water Permit. All of these failures of the Jack's Disposal Facility Owners and/or Operators to properly conduct monthly visual observations are a violation of Section B(4) of the Storm Water Permit.

Even when storm water discharge observations were conducted they were not done so as required. For example, the Jack's Disposal Facility Owners and/or Operators did not conduct observations at all discharge points at the Facility, as required by Section B(4) of the Wet Season. The Facility Owners and/or Operators only conducted visual observations of storm water discharges at one discharge point during the 2008-2009, 2011-2012, and 2012-2013 Wet Seasons. However, information available to Waterkeeper indicates that there are at least five discharge points at the Facility. Additionally, none of the records of the visual observations that were conducted include documentation of the "presence of any floating and suspended material, oil and grease, discolorations, turbidity, odor, and source of any pollutants," as required by Section B(4) of the Storm Water Permit, except for the month of October 2012.

Third, the Jack's Disposal Facility Owners and/or Operators have failed to analyze the Facility's storm water samples for all parameters required by the Storm Water Permit. Although all of the Facility Annual Reports except 2011-2012 list 4212, 4953, and 5093 SIC Codes for the Facility, the Jack's Disposal Facility Owners and/or Operators also state that they are not required to analyze storm samples for any additional Table D parameters. The Jack's Disposal Facility Owners and/or Operators have never analyzed their samples for all Table D parameters. In addition, information available to Waterkeeper indicates that pathogens, including *Escherichia coli* and coliform bacteria, are likely to be present in significant quantities in storm water runoff from solid waste vehicle and equipment maintenance facilities such as the Jack's Disposal Facility, yet the Jack's Disposal Facility Owners and/or Operators have never analyzed their samples for these pollutants. Thus, the Jack's Disposal Facility Owners and/or Operators have failed to properly analyze their storm water samples since at least the 2008-2009 Wet Season, in violation of Section B(5)(c) of the Storm Water Permit.

Finally, the Jack's Disposal Facility Owners and/or Operators fail to collect storm water samples from each of the Facility's discharge points, as required by Section B(5) and B(7) of the Storm Water Permit. Since at least the 2007-2008 Wet Season, the Jack's Disposal Facility Owners and/or Operators have only collected and analyzed storm water samples from one discharge point. However, information available to Waterkeeper indicates that there are at least five discharge points at the Facility, which are identified above, and none of the reasons to reduce the number of sampling locations permitted by the Storm Water Permit apply. Further,

the 2008-2009 Annual Report for the Facility states that the second storm event was not sampled during the first hour of discharge, the Jack's Disposal Facility Owners and/or Operators did not sample the first qualifying rain event of the Wet Season, and sample results were only reported for one storm event during the 2008-2009 Wet Season. The Jack's Disposal Facility Owners and/or Operators also did not sample during the first hour of discharge during the first storm event. These failures to properly sample are violations of Sections B(5) and B(7) of the Storm Water Permit.

The Jack's Disposal Facility Owners' and/or Operators' failure to conduct sampling and monitoring as required by the Storm Water Permit demonstrates that they have failed to develop, implement and/or revise an M&RP that complies with the requirements of Section B and Provision E(3) of the Storm Water Permit. Every day that the Jack's Disposal Facility Owners and/or Operators conduct operations with an inadequately developed, implemented, and/or revised M&RP is a separate and distinct violation of the Storm Water Permit and the Clean Water Act. The Jack's Disposal Facility Owners and/or Operators have been in daily and continuous violation of the Storm Water Permit's M&RP requirements. These violations are ongoing and Waterkeeper will include additional violations in its enforcement action. The Jack's Disposal Facility Owners and/or Operators are subject to civil penalties for all violations of the Clean Water Act occurring since October 8, 2008.

## F. Failure to Comply with the Storm Water Permit's Reporting Requirements

Section B(14) of the Storm Water Permit requires a permittee to submit an Annual Report to the Regional Board by July 1 of each year. The Storm Water Permit, in relevant part, requires that the Annual Report include the following: 1) a summary of visual observations and sampling results, 2) an evaluation of the visual observation and sampling and analysis results and the laboratory reports; and 3) the Annual Comprehensive Site Compliance Evaluation Report. Section B(14). As part of the Annual Comprehensive Site Compliance Evaluation, the facility operator shall review and evaluate all of the BMPs to determine whether they are adequate or whether SWPPP revisions are needed. *See* Storm Water Permit Section A(9). The Annual Report shall be signed and certified by a duly authorized representative, under penalty of law that the information submitted is true, accurate, and complete to the best of their knowledge. *See* Storm Water Permit, Sections B(14), C(9), and C(10). The facility operator must report any noncompliance at the time that the Annual Report is submitted, including 1) a description of the noncompliance and its cause, 2) the period of noncompliance and, if the noncompliance has not been corrected, the anticipated time it is expected to continue, and 3) steps taken or planned to reduce and prevent recurrence of the noncompliance. Storm Water Permit, Section C(11)(d).

The Jack's Disposal Facility Owners and/or Operators fail to submit Annual Reports that comply with the Storm Water Permit reporting requirements. For example, the 2009-2010, 2010-2011, and 2012-2013 Annual Reports were not signed, in violation of Section B(14) of the Storm Water Permit. Further, in the 2009-2010 and 2010-2011 Annual Reports for the Facility, the Jack's Disposal Facility Owners and/or Operators stated that they did not certify compliance with the Storm Water Permit. However, none of the required information was included regarding any steps taken or planned to prevent the recurrence of this noncompliance, in violation of

Notice of Violation and Intent to File Suit
October 8, 2013
Page 16 of 18

Section C(11) of the Storm Water Permit. The Jack's Disposal Facility Owners and/or Operators were required to also state and describe their noncompliance with the Storm Water Permit in the Facility's 2008-2009, 2011-2012, and 2012-2013 Annual Reports, given the Storm Water Permit violations during these Wet Seasons described above, and the failure to do so is also a violation of Sections C(11) of the Storm Water Permit. This step is crucial to ensuring future compliance with the Storm Water Permit and preventing recurring noncompliance, as has now happened at the Jack's Disposal Facility since at least the 2008-2009 Wet Season.

The Annual Reports submitted by the Jack's Disposal Facility Owners and/or Operators are also incomplete. For example, many of the worksheets to document visual observations that are included with the Annual Reports are left blank, and laboratory reports of sample analysis have not been submitted in many Annual Reports, as required by the Storm Water Permit. Additionally, the 2008-2009, 2009-2010, 2010-2011, and 2012-2013 Annual Reports for the Facility did not include the Annual Comprehensive Site Compliance Evaluation Report required by the Storm Water Permit.

The Storm Water Permit requires a permittee whose discharge exceeds the Storm Water Permit Receiving Water Limitations to submit a written report identifying what additional BMPs will be implemented to achieve water quality standards. Storm Water Permit, Receiving Water Limitations C(3) and C(4). Information available to Waterkeeper indicates that the Jack's Disposal Facility Owners and/or Operators have failed to submit the reports, in violation of Receiving Water Limitations C(3) and C(4) of the Storm Water Permit.

Each of the failures to report as required is a violation of the Storm Water Permit, and indicates a continuous and ongoing failure to comply with the Storm Water Permit's reporting requirements. Every day that the Jack's Disposal Facility Owners and/or Operators operate the Jack's Disposal Facility without reporting as required by the Storm Water Permit is a separate and distinct violation of the Storm Water Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a). The Jack's Disposal Facility Owners and/or Operators have been in daily and continuous violation of the Storm Water Permit's reporting requirements every day. These violations are ongoing. The Jack's Disposal Facility Owners and/or Operators are subject to civil penalties for all violations of the Clean Water Act occurring since October 8, 2008.

IV.    **RELIEF AND PENALTIES SOUGHT FOR VIOLATIONS OF THE CLEAN WATER ACT**

Pursuant to Section 309(d) of the Clean Water Act, 33 U.S.C. § 1319(d), and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. § 19.4, each separate violation of the Clean Water Act subjects the violator to a penalty for all violations occurring during the period commencing five years prior to the date of a notice of intent to file suit letter. These provisions of law authorize civil penalties of up to $32,500 per day per violation for all Clean Water Act violations between March 15, 2004 and January 12, 2009, and $37,500 per day per violation for all Clean Water Act violations after January 12, 2009. In addition to civil penalties, Waterkeeper will seek injunctive relief preventing further violations of the Clean Water Act pursuant to Sections 505(a) and (d), 33 U.S.C. § 1365(a) and (d), declaratory relief, and such

Notice of Violation and Intent to File Suit
October 8, 2013
Page 17 of 18

other relief as permitted by law. Lastly, pursuant to Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), Waterkeeper will seek to recover its costs, including attorneys' and experts' fees, associated with this enforcement action.

## V.    CONCLUSION

Waterkeeper is willing to discuss effective remedies for the violations described in this Notice Letter. However, upon expiration of the 60-day notice period, Waterkeeper will file a citizen suit under Section 505(a) of the Clean Water Act for Union Pacific's violations of the Storm Water Permit. Please direct all communications to Waterkeeper's legal counsel:

Daniel Cooper
daniel@lawyersforcleanwater.com
Layne Friedrich
layne@lawyersforcleanwater.com
Lawyers for Clean Water, Inc.
1004-A O'Reilly Avenue
San Francisco, California 94129
Tel: (415) 440-6520

Sincerely,

Garry Brown
Executive Director
Orange County Coastkeeper

Notice of Violation and Intent to File Suit
October 8, 2013
Page 18 of 18

## SERVICE LIST

<u>VIA U.S. MAIL</u>

Gina McCarthy, Administrator
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

Jared Blumenfeld, Regional Administrator
U.S. Environmental Protection Agency
Region IX
75 Hawthorne Street
San Francisco, CA 94105


Thomas Howard
Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, CA 95812-0100

Kurt Berchtold
Executive Officer
Santa Ana Regional Water Quality Control Board
3737 Main Street, Suite 500
Riverside, California 92501

## Attachment A: Table of Storm Water Sampling Data at the Jack's Disposal Facility Demonstrating Storm Water Permit Violations

| Sampling Date | Sampling Location[1] | Parameter | Units | Sample Result | Benchmark[2] | Magnitude of Benchmark Exceedance | CTR Criteria, if exceeded[3, 4] |
|---|---|---|---|---|---|---|---|
| 2/5/09 | S/W Front Gate | Aluminum | mg/L | 7.0 | 0.75 | 9.33 | |
| 2/5/09 | S/W Front Gate | COD | mg/L | 440 | 120 | 3.67 | |
| 2/5/09 | S/W Front Gate | Copper | mg/L | 0.097 | 0.0123 | 7.89 | 0.014 |
| 2/5/09 | S/W Front Gate | Iron | mg/L | 10.0 | 1.0 | 10 | |
| 2/5/09 | S/W Front Gate | O & G | mg/L | 49 | 15 | 3.27 | |
| 2/5/09 | S/W Front Gate | pH | pH units | 2.2 | 6.0-9.0 | n/a | |
| 2/5/09 | S/W Front Gate | SC | umhos/cm | 3700 | 200 | 18.5 | |
| 2/5/09 | S/W Front Gate | TSS | mg/L | 400 | 100 | 4 | |
| 2/5/09 | S/W Front Gate | Zinc | mg/L | 0.44 | 0.11 | 4 | 0.12 |
| 10/13/09 | S/W Front Gate | Aluminum | mg/L | 3.9 | 0.75 | 5.2 | |
| 10/13/09 | S/W Front Gate | COD | mg/L | 540 | 120 | 4.5 | |
| 10/13/09 | S/W Front Gate | Copper | mg/L | 0.098 | 0.0123 | 7.97 | 0.014 |
| 10/13/09 | S/W Front Gate | Iron | mg/L | 4.9 | 1.0 | 4.9 | |
| 10/13/09 | S/W Front Gate | O & G | mg/L | 29 | 15 | 1.93 | |
| 10/13/09 | S/W Front Gate | SC | umhos/cm | 530 | 200 | 2.65 | |

[1] The Jack's Disposal Facility Owners and/or Operators use inconsistent terms in their Annual Reports and their SWPPP to identify sampling locations. Samples were taken at points identified in Annual Reports variously as "S/W Front Gate," "Main Drain @ Street," "MPI," and "South Drain @ Street." Neither the SWPPP nor the Annual Reports use these terms or include descriptions of where samples were taken.

[2] Copper and zinc are water hardness dependent. The EPA Benchmarks listed in this table are based on a hardness of 75-100 mg/L. See Multi-Sector Permit, pp. 89 and 102 (Subsector K and N Benchmark Values).

[3] The CTR criteria for "priority toxic pollutants" are set forth in 40 C.F.R. § 131.38. These criteria are expressed as dissolved metal concentrations in the CTR. However, the Storm Water Permit requires permittees to report their sample results as total metal concentrations. See Storm Water Permit, Section B(10)(b). In order to compare the sample results reported in the Jack's Disposal Facility's Annual Reports with the CTR criteria, Waterkeeper used the CTR criteria converted to total metal concentrations set forth in the State Board's "Water Quality Goals" database, available at http://www.waterboards.ca.gov/water_issues/programs/water_quality_goals/. The formula used to convert the CTR criteria to total metal concentrations is set forth in the CTR at 40 C.F.R. § 131.38(b)(2)(i).

[4] WQS for copper and zinc are hardness dependent. The CTR criteria listed in this table are based on an assumed hardness of 100 mg/L. See 40 C.F.R. § 131.38.

1

| Date | Location | Parameter | Result | Units | | | |
|---|---|---|---|---|---|---|---|
| 10/13/09 | S/W Front Gate | TSS | 140 | mg/L | 100 | 1.4 | |
| 10/13/09 | S/W Front Gate | Zinc | 0.91 | mg/L | 0.11 | 8.27 | 0.12 |
| 12/7/09 | S/W Front Gate | Aluminum | 1.0 | mg/L | 0.75 | 1.33 | |
| 12/7/09 | S/W Front Gate | Iron | 1.6 | mg/L | 1.0 | 1.6 | |
| 12/7/09 | S/W Front Gate | Zinc | 0.12 | mg/L | 0.11 | 1.09 | |
| 10/6/10 | S/W Front Gate | SC | 840 | umhos/cm | 200 | 4.2 | |
| 10/6/10 | S/W Front Gate | TSS | 120 | mg/L | 100 | 1.2 | |
| 10/5/11 | MP1/Main Drain @ Street | Aluminum | 2.3 | mg/L | 0.75 | 3.01 | |
| 10/5/11 | MP1/Main Drain @ Street | COD | 290 | mg/L | 120 | 2.42 | |
| 10/5/11 | MP1/Main Drain @ Street | Copper | 0.05 | mg/L | 0.0123 | 4.07 | 0.014 |
| 10/5/11 | MP1/Main Drain @ Street | Iron | 4.2 | mg/L | 1.0 | 4.2 | |
| 10/5/11 | MP1/Main Drain @ Street | SC | 230 | umhos/cm | 200 | 1.15 | |
| 10/5/11 | MP1/Main Drain @ Street | Zinc | 0.28 | mg/L | 0.11 | 2.55 | 0.12 |
| 10/5/11 | MP1/Main Drain @ Street | TSS | 130 | mg/L | 100 | 1.3 | |
| 12/12/11 | MP1/South Drain @ Street | Aluminum | 2.1 | mg/L | 0.75 | 2.8 | |
| 12/12/11 | MP1/South Drain @ Street | COD | 220 | mg/L | 120 | 1.83 | |
| 12/12/11 | MP1/South Drain @ Street | Copper | 0.028 | mg/L | 0.0123 | 2.77 | 0.014 |
| 12/12/11 | MP1/South Drain @ Street | Zinc | 0.15 | mg/L | 0.11 | 1.36 | 0.12 |
| 12/12/11 | MP1/South Drain @ Street | Iron | 3.0 | mg/L | 1.0 | 3 | |
| 10/11/12 | MP1 | Aluminum | 6.3 | mg/L | 0.75 | 8.4 | |
| 10/11/12 | MP1 | COD | 770 | mg/L | 120 | 6.42 | |

2

| Date | | | | | | | |
|---|---|---|---|---|---|---|---|
| 10/11/12 | MP1 | Copper | 0.1 | mg/L | 0.0123 | 8.13 | 0.014 |
| 10/11/12 | MP1 | Iron | 13.0 | mg/L | 1.0 | 13 | |
| 10/11/12 | MP1 | SC | 520 | umhos/cm | 200 | 2.6 | |
| 10/11/12 | MP1 | TSS | 340 | mg/L | 100 | 3.4 | |
| 10/11/12 | MP1 | Zinc | 0.7 | mg/L | 0.11 | 6.36 | 0.12 |
| 11/8/12 | MP1 | Aluminum | 2.6 | mg/L | 0.75 | 3.47 | |
| 11/8/12 | MP1 | Copper | 0.087 | mg/L | 0.0123 | 7.07 | 0.014 |
| 11/8/12 | MP1 | Iron | 5.3 | mg/L | 1.0 | 5.3 | |
| 11/8/12 | MP1 | SC | 440 | umhos/cm | 200 | 2.2 | |
| 11/8/12 | MP1 | COD | 620 | mg/L | 120 | 5.17 | |
| 11/8/12 | MP1 | TSS | 270 | mg/L | 100 | 2.7 | |
| 11/8/12 | MP1 | Zinc | 0.38 | mg/L | 0.11 | 3.45 | 0.12 |

3

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____ Virginia A. Phillips _____ and the assigned Magistrate Judge is _____ Sheri Pym _____ .

The case number on all documents filed with the Court should read as follows:

## ED CV 14-00071 VAP (SPx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

_____ January 13, 2014 _____
Date

By _ L. Adams _____
Deputy Clerk

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

☐ **Western Division**
312 N. Spring Street, G-8
Los Angeles, CA 90012

☐ **Southern Division**
411 West Fourth St., Ste 1053
Santa Ana, CA 92701

☐ **Eastern Division**
3470 Twelfth Street, Room 134
Riverside, CA 92501

**Failure to file at the proper location will result in your documents being returned to you.**

CV-18 (08/13)                    NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

INLAND EMPIRE WATERKEEPER, a program of Orange County Coastkeeper; ORANGE COUNTY COASTKEEPER, a California non-profit corporation

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

BURRTEC WASTE GROUP, INC., a California corporation; BURRTEC WASTE INDUSTRIES, INC., a California corporation

**(b)** County of Residence of First Listed Plaintiff    Riverside
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    San Bernardino
*(IN U.S. PLAINTIFF CASES ONLY)*

**(c)** Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

Daniel Cooper (Bar No. 153576)
Lawyers for Clean Water, Inc.
1004A O'Reilly Avenue, San Francisco, California, 94129
(415) 440-6250

Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☒ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No    ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
33 U.S.C. §§ 1251 et seq. (Clean Water Act); discharges of pollutants in violation of the Clean Water Act and California Permit for Discharges of Stormwater Associated with Industrial Activities

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **TORTS** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | **PERSONAL PROPERTY** | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 370 Other Fraud | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 371 Truth in Lending | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 380 Other Personal Property Damage | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | ☐ 385 Property Damage Product Liability | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | **BANKRUPTCY** | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 422 Appeal 28 USC 158 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☒ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | ☐ 423 Withdrawal 28 USC 157 | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | **CIVIL RIGHTS** | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 440 Other Civil Rights | ☐ 710 Fair Labor Standards Act | |
| | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 441 Voting | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 442 Employment | ☐ 740 Railway Labor Act | |
| | ☐ 230 Rent Lease & Ejectment | | ☐ 443 Housing/Accomodations | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 445 American with Disabilities-Employment | ☐ 790 Other Labor Litigation | |
| ☐ 950 Constitutionality of State Statutes | | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other | ☐ 791 Employee Ret. Inc. Security Act | |
| | | | ☐ 448 Education | | |

**FOR OFFICE USE ONLY:**    Case Number:    EDCV14-00071 VAP SPx

CV-71 (11/13)    CIVIL COVER SHEET    Page 1 of 3

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII.  VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned.  This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A:  Was this case removed from state court?  ☐ Yes  ☒ No   If "no," go to Question B.  If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| Question B:  Is the United States, or one of its agencies or employees, a party to this action?  ☐ Yes  ☒ No   If "no," go to Question C.  If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| | A PLAINTIFF? Then check the box below for the county in which the majority of DEFENDANTS reside. | A DEFENDANT? Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| | ☐ Los Angeles | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? (Make only one selection per row) | A. Los Angeles County | B. Ventura, Santa Barbara, or San Luis Obispo Counties | C. Orange County | D. Riverside or San Bernardino Counties | E. Outside the Central District of California | F. Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ |
| Indicate the location in which a majority of defendants reside: | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ |
| Indicate the location in which a majority of claims arose: | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ |

| C.1. Is either of the following true? If so, check the one that applies: | C.2. Is either of the following true? If so, check the one that applies: |
|---|---|
| ☐ 2 or more answers in Column C | ☒ 2 or more answers in Column D |
| ☐ only 1 answer in Column C and no answers in Column D | ☐ only 1 answer in Column D and no answers in Column C |
| Your case will initially be assigned to the SOUTHERN DIVISION. Enter "Southern" in response to Question D, below. If none applies, answer question C2 to the right. ➡ | Your case will initially be assigned to the EASTERN DIVISION. Enter "Eastern" in response to Question D, below. If none applies, go to the box below. ➡ |

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division?   Enter the initial division determined by Question A, B, or C above: ➡ | INITIAL DIVISION IN CACD |
|---|---|
| | EASTERN DIVISION |

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**IX(a). IDENTICAL CASES**: Has this action been previously filed **in this court** and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES**:  Have any cases been previously filed **in this court** that are related to the present case?   ☐ NO   ☒ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☒ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☒ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):** _____   DATE: _____

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended.  Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |